588 So.2d 448 (1991)
Russell M. FRASER
v.
R. Scott REYNOLDS, et al.
Bobby R. LEWIS
v.
R. Scott REYNOLDS, et al.
88-1466, 88-1522.
Supreme Court of Alabama.
July 26, 1991.
Rehearing Denied August 30, 1991.
*449 H. Harold Stephens of Lanier Ford Shaver & Payne, Huntsville, for appellant Bobby R. Lewis.
F.A. Flowers III and Paul P. Bolus of Burr & Forman, Birmingham, for appellant Russell M. Fraser.
Gary L. Rigney of Rigney, Garvin & Webster, Huntsville, for appellees R. Scott Reynolds, et al.

ON RETURN TO REMAND
HOUSTON, Justice.
This case is before us once again for a final determination as to whether the jury's verdict was excessive. See Fraser v. Reynolds, 588 So.2d 442 (Ala.1990), wherein we affirmed the judgment with respect to the liability issues that were raised by the defendants, Bobby R. Lewis and Russell M. Fraser, but remanded the case for a determination by the trial court as to whether the damages were excessive, in accordance with Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989). For the following reasons, we hold that the punitive damages awarded were not excessive, but that the compensatory damages awarded to two of the plaintiffs, R. Scott Reynolds and Gregory S. Windham, were excessive.
The defendants filed post-judgment motions challenging the verdict as being excessive. The trial court denied those motions, without comment. With regard to the compensatory damages award, the defendants argued on original submission of these appeals that the jury had failed to take into consideration certain tax benefits that, they said, the evidence showed had been enjoyed by the plaintiffs as a result of their investments in the partnership. At trial, the court instructed the jury to take any proven tax benefits into account, and our review of the record caused us to question why the jury had apparently not taken any tax benefits into consideration. In addition, Lewis argued that the evidence did not support an award against him of twice the amount of compensatory damages awarded against Fraser. Finally, with regard to the punitive damages awards, both defendants argued that the evidence did not support the amount awarded by the jury, and Lewis argued, in particular, that the evidence did not support the award against him of twice the amount of punitive damages awarded against Fraser. Concerned that the verdict might be excessive, we remanded the case for a hearing on the excessiveness issue.
After holding an evidentiary hearing and upon considering arguments of counsel, the trial court declined to reduce the verdict, stating in pertinent part:
"The issue relating to the tax savings provided to the Plaintiffs was properly submitted to the jury. The Supreme Court's opinion noted that this Court properly instructed the jury to consider any proven tax savings in reaching its verdict. This issue, being a question of fact properly addressed by the jury, was taken into account by the finder-of-fact, and, apparently, was given little credence based upon counterbalancing evidence indicating the lack of utility of the tax savings in light of each Plaintiff's relative tax posture.
"Upon consideration of the evidence provided at the post-trial hearing, arguments and briefs of counsel and having observed the trial, the actions and reactions of the jurors and the conduct of counsel, the Court is of the opinion and expressly finds that the jury's decisionmaking process was not tainted by bias, passion, improper motive, or prejudice. The Court further finds that the jury's award does not exceed an amount which will allow for society's goals of punishment and deterrence. Each of the factors set out in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), has been considered by the Court. Based upon the foregoing, the Court finds that the verdict is not excessive and declines to reduce it."
In Green Oil Co. v. Hornsby, supra, this Court, discussing the circumstances *450 under which a jury's verdict loses its constitutional protection and, thus, may be set aside, stated in pertinent part as follows:
"`The right to a trial by jury in civil cases is guaranteed by § 11, Alabama Constitution; therefore, a jury verdict will not be set aside unless it is flawed, thereby losing its constitutional protection. Upon finding a verdict to be flawed, the trial court, pursuant to A.R.Civ.P. 59(f), and this Court, pursuant to Code 1975, § 12-22-71, may interfere with it. At what point, however, will a damages award require a finding of a flawed jury verdict?
"`"First, it may include or exclude a sum which is clearly recoverable or not as a matter of law, or which is totally unsupported by the evidence, where there is an exact standard or rule of law that makes the damages legally and mathematically ascertainable at a precise figure. In these situations, a trial court may, and should, reduce or increase the amount of the verdict to reflect the amount to which the parties are entitled as a matter of law. Second, a jury verdict may be flawed because it results, not from the evidence and applicable law, but from bias, passion, prejudice, corruption, or other improper motive...."
"`Hammond v. City of Gadsden, 493 So.2d 1374, 1378 (Ala.1986).' [Quoting City Bank of Alabama v. Eskridge, 521 So.2d 931, 932-33 (Ala.1988).]
"Thus, the invocation of the trial court's authority under Ala.R.Civ.P. 59(f) to determine the proper amount of recovery and to deny a new trial, subject to [the] filing of a remittitur of the amount in excess of the proper amount, is dependent upon the trial court's holding that the presumption of correctness of the jury verdict has been overcome by a clear showing that the amount of the verdict is excessive. It is also well understood that in considering the adequacy or excessiveness of a verdict, each case must be determined on its own facts, and that neither the trial court, nor this Court, may substitute its judgment for that of the jury. City Bank of Alabama v. Eskridge, supra; Hammond v. City of Gadsden, supra."
539 So.2d at 221-22.
The Court in Green Oil went on to expound on the factors to be considered when reviewing an award of punitive damages:
"Because the purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter the wrongdoer and others from committing similar wrongs in the future, the proper amount of punitive damages rests largely within the jury's discretion. However, although punitive damages need bear no particular relationship to actual damages, they, nonetheless, must not exceed an amount that will accomplish society's goals of punishment and deterrence. Maryland Casualty Co. v. Tiffin, 537 So.2d 469 (Ala.1988); City Bank of Alabama v. Eskridge, supra; Roberson v. Ammons, 477 So.2d 957 (Ala.1985).
"....
"The following could be taken into consideration by the trial court in determining whether the jury award of punitive damages is excessive or inadequate:
"`(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the actual or likely harm is slight, the damages should be relatively small. If grievous, the damages should be much greater.
"`(2) The degree of reprehensibility of the defendant's conduct should be considered. The duration of this conduct, the degree of the defendant's awareness of any hazard which his conduct has caused or is likely to cause, and any concealment or "coverup" of that hazard, and the existence and frequency of similar past conduct should all be relevant in determining this degree of reprehensibility.
"`(3) If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, *451 so that the defendant recognizes a loss.
"`(4) The financial position of the defendant would be relevant.
"`(5) All the costs of litigation should be included, so as to encourage plaintiffs to bring wrongdoers to trial.
"`(6) If criminal sanctions have been imposed on the defendant for his conduct, this should be taken into account in mitigation of the punitive damages award.
"`(7) If there have been other civil actions against the same defendant, based on the same conduct, this should be taken into account in mitigation of the punitive damages award.'

"Aetna Life Insurance Co. v. Lavoie, 505 So.2d 1050, 1062 (Ala.1987), Houston, J., concurring specially."
539 So.2d at 222-24.
Because the right to trial by jury in civil cases is guaranteed by Article I, § 11, of the Alabama Constitution, neither the trial court, nor this Court, can interfere with a jury's verdict unless it is constitutionally flawed. As previously noted, a verdict is constitutionally flawed if it includes a sum that is clearly not recoverable as a matter of law, or if there is an exact standard or rule of law that makes the damages legally and mathematically ascertainable at a precise figure and the damages are set at something other than that precisely ascertainable figure. When a verdict is unconstitutionally excessive, the trial court, or this Court, if the trial court refuses to act, must reduce the amount of the verdict to reflect the amount to which the party in whose favor it is returned is entitled as a matter of law.
Our review of the record indicates that the defendants proved, through testimony and documentary evidence, that the maximum amount of compensatory damages due to Reynolds was $5,671.66, representing his $14,100 investment in the partnership less $8,428.34 in tax benefits that he enjoyed by virtue of his investment losses. Likewise, our review of the record indicates that the defendants proved that the maximum amount of compensatory damages due to Windham was $10,410.25, representing his $28,200 investment in the partnership less $17,789.75 in tax benefits that he enjoyed by virtue of his investment losses. Although the record shows that the defendants also proved that Kenneth Tichansky and Teresa Scholz enjoyed certain tax benefits as a result of their investments in the partnership, the record does not show that the jury was presented with sufficient evidence from which to determine the actual amount of those benefits. Furthermore, our review of the record convinces us that the jury's apportionment of the compensatory damages, under the law of this case, was supported by the evidence.[1] Therefore, we conclude that the compensatory damages awards in favor of Reynolds against Fraser and Lewis should have been reduced by the trial court to $1,890.55 and $3,781.11 respectively, and that the compensatory damages awards in favor of Windham against Fraser and Lewis should have been reduced to $3,470.08 and $6,940.17 respectively.
As previously noted, a jury's assessment of punitive damages also loses its constitutional protection if it is flawed. An assessment of punitive damages is constitutionally flawed, and, thus, must be reduced by the court, if it is either the result of bias, passion, prejudice, corruption, or other improper motive, or, although the result of a properly functioning jury, is nonetheless excessive because it exceeds an amount that will accomplish society's goals of punishment and deterrence. The court's duty to reduce an unconstitutionally excessive punitive damages award was recently cited by the United States Supreme Court as a major reason for that Court's rejecting a due process challenge to Alabama's system of post-judgment review of punitive damages awards. See Pacific Mutual *452 Life Ins. Co. v. Haslip, ___ U.S. ___, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).
The trial court found that the jury's assessment of punitive damages in this case was not the result of bias, passion, prejudice, corruption, or other improper motive, and our review of the record convinces us that the trial court's finding in this regard was not erroneous. Furthermore, after carefully reviewing the evidence in light of the factors set out in Green Oil Co. v. Hornsby, supra, for determining whether an award of punitive damages is excessive, we cannot say that the amount of punitive damages assessed by the jury exceeded an amount that will accomplish society's goals of punishment and deterrence.
The evidence was sufficient to warrant submitting the question of punitive damages to the jury, and the record reveals that the defendants' culpability was probably found by the jury to stem from their recklessness in involving themselves in the business ventures, or, characterized more appropriately, the misadventures, of Joe Mitchell,[2] and from allowing Mitchell to jeopardize the plaintiffs' interests in the partnership. The potential for harm here was great, in that each of the plaintiffs could have conceivably had a greater economic loss as a result of his or her investments in the partnership. Likewise, the actual economic loss to each of the plaintiffs was not insignificant. The jury awarded Tichansky $7,050, the amount of his investment in the partnership; it awarded Scholz $10,525, the amount of her investment in the partnership;[3] Reynolds's loss, when adjusted by subtracting the amount of tax benefits that he enjoyed by virtue of his investment, was $5,671.66; and Windham's loss, when adjusted by subtracting the amount of tax benefits that he enjoyed by virtue of his investment, was $10,410.25. Finally, the evidence, as developed at the post-judgment hearing, shows that both of the defendants are doctors, each earning in excess of $200,000 per year and each owning equity in certain assets, which in Fraser's case amounts to approximately $213,600 and in Lewis's case amounts to approximately $48,000.
A verdict awarding punitive damages is not considered to be unconstitutionally excessive until the defendant against whom it has been rendered produces evidence that the amount is greater than a sum necessary to accomplish society's goals of punishment and deterrence. Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1986), is an example of a case where the verdict was shown to be excessive. In the present case, however, the trial court, considering the culpability of the defendants, the potential for harm, the actual harm that resulted from the defendants' actions, and the defendants' individual earnings and assets, found from conflicting evidence that the punitive damages assessed against the defendants did not exceed an amount necessary to punish them for their actions and to deter them and others similarly situated from engaging in similar conduct in the future. After a thorough review of the evidence, we are not convinced that the trial court was wrong.
Accordingly, we affirm the judgment pertaining to the assessment of punitive damages. However, unless, within 30 days from this date, Reynolds accepts and files a remittitur, pursuant to Ala.Code 1975, § 12-22-71, of $2,808.45 of his compensatory damages award against Fraser and $5,618.89 of his compensatory damages award against Lewis, the judgment for Reynolds pertaining to the award of compensatory damages will be reversed and the case remanded. Likewise, unless, within 30 days from this date, Windham accepts and files a remittitur of $5,929.92 of his compensatory damages award against Fraser and $11,859.83 of his compensatory *453 damages award against Lewis, the judgment for Windham pertaining to the award of compensatory damages will be reversed and the case remanded. On acceptance and filing of the remittiturs specified above, the judgment will stand affirmed for the reduced amount.
AFFIRMED IN PART AND AFFIRMED CONDITIONALLY IN PART.
HORNSBY, C.J., and SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
ALMON, J., concurs in the result.
MADDOX, J., concurs in part and dissents in part.
MADDOX, Justice (concurring in part and dissenting in part).
I concur in that portion of the opinion relating to compensatory damages, but I would not affirm the judgment awarding punitive damages in the sum of $375,000. Instead, I would condition any affirmance of that judgment on the filing of a remittitur.
On remand, the trial court, in refusing to reduce the award of punitive damages, stated:
"Upon consideration of the evidence provided at the post-trial hearing, arguments and briefs of counsel and having observed the trial, the actions and reactions of the jurors and the conduct of counsel, the Court is of the opinion and expressly finds that the jury's decisionmaking process was not tainted by bias, passion, improper motive, or prejudice. The Court further finds that the jury's award does not exceed an amount which will allow for society's goals of punishment and deterrence. Each of the factors set out in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), have been considered by the Court. Based upon the foregoing, the Court finds that the verdict is not excessive and declines to reduce it."
The trial court used boilerplate language in stating that it applied the Green Oil factors. I cannot tell which factors it used and what conclusions it reached in that regard.[4] In any event, the trial court refused to reduce the award. This Court also states, among other things, that it has conducted an independent review of the award in light of the Green Oil factors; it also gives as one of its reasons for affirming that the defendants are "doctors, each earning a salary in excess of $200,000 per year and each owning equity in certain assets, which in Fraser's case amounts to approximately $213,600 and in Lewis's case amounts to approximately $48,000." Assuming those facts are true, do they show that it was necessary to sustain the awards in order to accomplish society's goals of punishment and deterrence? I think not, especially here, because another jury did not think such a stiff penalty was appropriate. This case was tried twice, and the record shows that the first jury that tried this case set the total penalty at $30,000, and these plaintiffs made no claim on the original appeal that the award of $30,000 as a penalty was inadequate. How can the trial court and this Court approve this higher award without at least some statement of the reasons?
The result that has been reached in this casethe awarding to the plaintiffs of a total of $375,000 in punitive damages, when the first jury that heard this case awarded only $30,000shows why this Court should very carefully scrutinize awards of punitive damages by juries: Juries are given a standardless discretion in imposing such penalties in civil cases.
The role of the court and the jury in the awarding of punitive damages has received increased attention by the Alabama legislature, the trial courts, this Court, and the United States Supreme Court. One of the first cases to address the issue of burgeoning punitive damages was Shiloh Const. Co. v. Mercury Const. Corp., 392 So.2d 809 (Ala.1980) (Torbert, C.J., and Maddox, J., dissenting), in which a jury had awarded damages totalling $559,966.61, and the trial judge had granted a remittitur. A majority of this Court reversed the judgment and *454 reinstated the verdict, even though the trial judge had found that the verdict was against the great weight and preponderance of the evidence. The Shiloh Court, even though embarking on what I thought was new territory and ignoring what I believed to be clear legal authority to the contrary, did not establish any standards for either a jury or reviewing courts to use in determining whether a particular award should or should not be set aside or a remittitur required. After Shiloh, this Court continued to review awards without establishing any specific guidelines for review. As author of the opinion in General Motors Corp. v. Edwards, 482 So.2d 1176, 1199 (Ala.1985), I noted that this Court had not adopted any standards to govern such reviews of jury verdicts, stating the following:
"As can readily be seen by a review of these cases, this Court has not yet adopted specific standards for courts to apply in granting or denying remittitur. We believe that the time has come for this Court to study the remittitur practice in Alabama, and to adopt a rule or rules of practice which would ensure the protection of the jury system and the parties' right to a jury trial, but which would also protect the public's interest in decreased court costs and a speedy and just determination of every case upon the merits. We do not adopt those standards in this case, because to do so would effect a major change in current remittitur practice, and such a major change should be adopted only after adequate note and deliberate study by the full Court."
482 So.2d at 1199. (Emphasis original). This Court, in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1986), adopted some factors for reviewing courts to use in deciding whether to interfere with a jury award of punitive damages, after litigants had levelled attacks on the Alabama practice as violating the United States Constitution.
As I stated in my special concurring opinion in Green Oil Co., 539 So.2d 218, 224, the factors set out in that case are legitimate factors that a trial judge may consider in reviewing a claim that a jury has awarded an excessive amount in punitive damages. I stated then, however, and I restate now, that "[Green Oil] does not address the question of what a jury can consider when determining the proper amount to award."
The latest expression on the constitutional question relating to the excessiveness of punitive damages awards is contained in the landmark decision of the Supreme Court of the United States in Pacific Mutual Life Ins. Co. v. Haslip, ___ U.S. ___, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), a case appealed from this Court. In Haslip, this Court had affirmed an award of punitive damages against an insurance company whose agent had taken a policyholder's premiums and had not remitted them to the company; the company refused to accept responsibility for the conduct of its agent and refused to pay policy benefits to Ms. Haslip. The Supreme Court of the United States affirmed the judgment of this Court, but I believe it affirmed only because that Court thought that Alabama's review procedures were sufficient to sustain the award made in that case. If Pacific Mutual says anything, it says that each case must be approached on a case-by-case basis, and it is clear to me that if the trial courts and the appellate courts do not, in fact, conduct an adequate and meaningful review of awards of punitive damages that are alleged to be disproportionate to the actual damages, then a defendant's due process rights can be seriously jeopardized. Even though the trial court and this Court have conducted a review, I will explain why I believe that the review was neither adequate nor meaningful in this particular case a case in which the reviews gave no consideration to the fact that another jury, hearing the same evidence, and being given the same instructions on the law relating to the award of punitive damages, made an award that was $345,000 less than the amount awarded by the jury in this case.
The majority sustains the award on the following ground:
"The evidence was sufficient to warrant submitting the question of punitive *455 damages to the jury, and the record reveals that the defendants' culpability was probably found by the jury to stem from their recklessness in involving themselves in the business ventures.... The potential for harm here was great, in that each of the plaintiffs could have conceivably had a greater economic loss as a result of their investments...." (Emphasis added.)
The Court classifies the conduct here as "recklessness in involving themselves in the business ventures." Is "reckless" conduct so culpable as to require the imposition of a penalty in the total sum of $375,000? I think not. "Recklessly" is defined in our criminal statutes at § 13A-2-2(3), Ala.Code 1975, as follows:
"Recklessly. A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."
I accept the fact that the Supreme Court of the United States has essentially said, in Haslip, that juries can, based on the type of instruction given in this case, make awards of punitive damages, but, as I read the Haslip case, the Supreme Court allows such jury awards only if there is an adequate and meaningful review by the trial and appellate courts.
I cannot accept the proposition that the culpable conduct in this case merits punishment in the sum of $375,000 and I cannot find such an award to be consistent with the first jury's finding of culpability, that jury awarding only $30,000. Clearly, the facts surrounding the culpable conduct in this case can in no way compare with the culpable conduct in Haslip. The culpable conduct there was certainly more than "recklessness in involving [oneself] in the business ventures," the culpable conduct found to justify the award in this case. Comparing the facts of this case against the facts of Haslip, or to some of the facts of other cases that have been reviewed by this Court, I cannot find any semblance of similarity insofar as the culpability of conduct is concerned.
What particularly bothers me, as I have already indicated, is the fact that a previous jury, hearing the same evidence, being instructed the same on the law of the case with regard to punitive damages, found that the amount needed to accomplish society's goals of punishment and deterrence was the total sum of $30,000. The jury in this case sets the punishment at $375,000.
If this were a criminal case rather than a civil case, there would be a serious question whether these defendants could be punished more than they were punished initially. In North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court of the United States held that a defendant who had been successful in a post-conviction proceeding in getting his conviction set aside, could not be given a higher sentence on retrial if the higher sentence was based on vindictiveness.[5]
I mention the North Carolina v. Pearce principle because there is authority for the proposition that the imposition of a civil penalty for the same conduct that has been punished criminally can present double jeopardy problems. Punitive damages serve punitive goals, Day v. Woodworth, 54 U.S. (13 How.) 363, 14 L.Ed. 181 (1851), and "the labels `criminal' and `civil' are not of paramount importance." United States v. Halper, 490 U.S. 435, 447, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989) (imposition of a statutory civil fine on a defendant who had previously been convicted and *456 fined in a criminal case for the same conduct violated the Double Jeopardy Clause).
In Halper, the Court, in determining whether the civil fine imposed in that case constituted punishment, said the following:
"In making this assessment, the labels `criminal' and `civil' are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and conversely, that both punitive and remedial goals may be served by criminal penalties. The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads. Cf. Hicks v. Feiock, 485 U.S. 624, 631, 108 S.Ct. 1423 [1429] 99 L.Ed.2d 721 (1988) (`the labels affixed either to the proceeding or to the relief imposed ... are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law'). To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied to the individual case serves the goals of punishment.
"These goals are familiar. We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence. See, e.g., Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168, 83 S.Ct. 554, 567, 9 L.Ed.2d 644 (1963) (these are the `traditional aims of punishment'). Furthermore, `[r]etribution and deterrence are not legitimate nonpunitive governmental objectives.' Bell v. Wolfish, 441 U.S. 520, 539, n. 20, 99 S.Ct. 1861, 1874, n. 20 [60 L.Ed.2d 447] (1979). From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. Cf. Mendoza-Martinez, 372 U.S., at 169, 83 S.Ct. at 568 (whether sanction appears excessive in relation to its nonpunitive purpose is relevant to determination whether sanction is civil or criminal). We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.
"We acknowledge that this inquiry will not be an exact pursuit. In our decided cases we have noted that the precise amount of the Government's damages and costs may prove to be difficult, if not impossible, to ascertain. See, e.g., [Rex Trailer Co. v. United States, 350 U.S. 148], at 153, 76 S.Ct. [219] 222 [100 L.Ed. 149 (1956) ]. Similarly, it would be difficult if not impossible in many cases for a court to determine the precise dollar figure at which a civil sanction has accomplished its remedial purpose of making the Government whole, but beyond which the sanction takes on the quality of punishment. In other words, as we have observed above, the process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice. Our upholding reasonable liquidated damages clauses reflects this unavoidable imprecision. Similarly, we have recognized that in the ordinary case fixed-penalty-plus-double-damages provisions can be said to do no more than make the Government whole.
"We cast no shadow on these timehonored judgments. What we announce now is a rule for the rare case, the case such as the one before us, where a fixedpenalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the *457 civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as `punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. We must leave to the trial court the discretion to determine on the basis of such an accounting, the size of the civil sanction the Government may receive without crossing the line between remedy and punishment. Cf. Morris v. Mathews, 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986) (reducing criminal conviction to lesser included offense in order to avoid double jeopardy bar); see also Peterson v. Richardson, 370 F.Supp. 1259, 1267 (N.D.Tex 1973), aff'd sub nom. Peterson v. Weinberger, 508 F.2d 45 (C.A.5), cert. denied sub nom. Peterson v. Mathews, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975) (imposing less than full civil sanction authorized by False Claims Act when the full sanction would be unreasonable and not remotely related to actual loss). While the trial court's judgment in these matters often may amount to no more than an approximation, even an approximation will go far towards ensuring both that the Government is fully compensated for the costs of corruption and that, as required by the Double Jeopardy Clause, that defendant is protected from a sanction so disproportionate to the damages caused that it constitutes a second punishment.
"We do not consider our ruling far reaching or disruptive of the Government's need to combat fraud. Nothing in today's ruling precludes the Government from seeking the full civil penalty against a defendant who previously has not been punished for the same conduct, even if the civil sanction imposed is punitive. In such a case, the Double Jeopardy Clause simply is not implicated. Nor does the decision prevent the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding. In a single proceeding the multiple punishment issue would be limited to ensuring that the total punishment did not exceed that authorized by the legislature. See, e.g., Missouri v. Hunter, 459 U.S. 359, 368-369, 103 S.Ct. 673, 679-680, 74 L.Ed.2d 535 (1983) (`Where ... a legislature specifically authorizes cumulative punishment under two statutes ... the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial'). Finally, nothing in today's opinion precludes a private party from filing a civil suit seeking damages for conduct that previously was the subject of criminal prosecution and punishment. The protections of the Double Jeopardy Clause are not triggered by litigation between private parties. In other words, the only proscription established by our ruling is that the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the Government whole."
490 U.S. at 447-451, 109 S.Ct. at 1901-1903.
As I read Halper, the Court holds that the imposition of a civil penalty can have constitutional implications, and clearly the Haslip case recognizes this same principle. As I view the matter, the question becomes: Should a court reviewing an award of punitive damages in a civil case give any consideration to the fact that a prior jury had awarded a sum substantially less than the sum awarded by a second jury and that in the first appeal the plaintiffs made no challenge to the adequacy of the initial award? I think that the answer to that question, of course, is in the affirmative.
Although I do not suggest that an award of punitive damages is res judicata as to amount of damages, I would suggest that if the facts of a case show that the jury in an earlier trial of the case has assessed punitive damages in an amount substantially different from the amount assessed by a *458 subsequent jury, as is true in this case, then the fact of that disparity in amounts should, at least, be considered by the reviewing trial court, and by this Court, in determining whether the second award is excessive.[6]
The issue presented by this case, of course, as the Supreme Court of the United States said in Haslip, will not go away.[7] I believe that this Court, although conducting a review of the award, has failed to take into consideration some of the principles that I think are applicable in this case. Consequently, I would order a remittitur as a condition of affirmance, and I must dissent as to that particular aspect of the majority opinion.
NOTES
[1] We pointed out in our original opinion in this case that the apportioned verdict "would be illegal and, thus, would have to be set aside but for the fact that the record shows the issue to have been waived by the defendants at trial," 588 So.2d at 445, by their failure to object to the court's charge allowing apportionment.
[2] As we noted in our original opinion, Mitchell failed to appear at trial and a default judgment was entered against him. Mitchell did not appeal from that judgment.
[3] As previously noted, the defendants proved that Tichansky and Scholz also enjoyed certain tax benefits as a result of their investments, but failed to present to the jury sufficient proof of the amount of those benefits. Had that proof been provided, the jury's award of compensatory damages to Tichansky and Scholz would have to be reduced accordingly.
[4] In other cases, trial judges have detailed their reasons for refusing to reduce an award.
[5] In a subsequent case, arising out of an appeal from this Court, the Supreme Court of the United States did approve the imposition of a higher sentence upon a retrial of the case, Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), but only because sentence concessions had been made regarding the defendant's earlier plea of guilty upon which the first sentence was imposed.
[6] I recognize that this Court has affirmed a punitive damages award when, on retrial, a subsequent jury has awarded more in punitive damages than did a prior jury. See, Winn-Dixie Montgomery, Inc. v. Henderson, 395 So.2d 475 (Ala.1981) ($14,000 awarded by first jury (353 So.2d 1380) and $45,000 awarded on retrial). I dissented in that case because I did not think the conduct there shown was so culpable as to justify any award of punitive damages, believing as I do in this case, that punitive damages should bear some relationship to the culpability of the defendant's conduct.
[7] In Haslip, Justice Blackmun, authoring the majority opinion, said:

"[W]e cannot say that the common-law method for assessing punitive damages is so inherently unfair as to deny due process and to be per se unconstitutional...."
"This, however, is not the end of the matter. It would be just as inappropriate to say that, because punitive damages have been recognized for so long, their imposition is never unconstitutional [citation omitted].... We note once again our concern about punitive damages that `run wild.' Having said that, we conclude that our task today is to determine whether the Due Process Clause renders the punitive damages award in this case constitutionally unacceptable."
__ U.S. at ___, 111 S.Ct. at 1043.