Edgar A. Schwertfeger, Jr., appeals from a judgment based on a jury verdict awarding John David Moorehouse and Julie Marie Moorehouse, d/b/a Seymour Company, damages for the conversion of two vending machines. The jury returned a verdict of $750 in compensatory damages and $25,000 in punitive damages. On appeal, Schwertfeger raises issues regarding the sufficiency of the evidence, the jury charges, certain evidentiary matters, and an alleged excessiveness of the punitive damages award. We affirm.
 I. Facts
Because of the recent spread of the AIDS virus, John David Moorehouse, a physician, decided to invest in condom vending machines. He said he believed that by providing condoms through vending machines in an "upscale market" he could serve two purposes — to assist in the prevention of AIDS and to earn a good return on an investment.
John David Moorehouse and his wife, Julie Marie Moorehouse, d/b/a Seymour *Page 323 
Company, purchased 20 condom vending machines from Ambassador New Vending Company (hereinafter "Ambassador") through its salesman Charlie Williams. The agreement between the Moorehouses and Ambassador provided that Ambassador's subcontractor would place the machines in various locations.
During the course of the negotiations for the sale of the machines, Williams allegedly made fraudulent representations to the Moorehouses concerning the quality and placement of the vending machines. The Moorehouses eventually sued Ambassador and Williams. That lawsuit was settled, and Ambassador agreed to buy back the vending machines and return the Moorehouses' deposit. With the Moorehouses' permission, Williams agreed to locate, retrieve, and return the machines to Ambassador.
Two of the vending machines were placed in a business called the "Rebel Lounge" owned by Edgar A. Schwertfeger, Jr. On his first attempt to retrieve the two machines from that business location, Williams found that the Rebel Lounge was locked and that no business was being operated there. Williams later determined that Schwertfeger owned the building, and he attempted on several occasions to reach Schwertfeger by telephone but was able only to leave messages for him.
Williams finally talked with Schwertfeger and attempted to arrange for the retrieval of the two vending machines. In his conversation with Williams, Schwertfeger used abusive language, stating "you're talking about those goddamn rubber machines. I wouldn't make a special trip for you or for Jesus Christ to get the machines." Schwertfeger made it clear to Williams that he was not going to grant Williams access to his building to retrieve the vending machines.
On August 29, 1988, the Moorehouses directed their attorney to notify Schwertfeger in writing that they were the owners of the two machines, that Williams was authorized to retrieve the machines, and that Williams would meet Schwertfeger at a mutually convenient time. That letter was sent by certified mail, and although Schwertfeger denied reading the letter, the return receipt reflected that Schwertfeger had signed for the letter. In September 1988, Schwertfeger called the Moorehouses' attorney. During that telephone conversation Schwertfeger told the Moorehouses' attorney that he was not "going to give those goddamn rubber machines to anybody."
The plaintiffs sued Schwertfeger on November 2, 1988, alleging that Schwertfeger had willfully, wantonly, recklessly, maliciously, and oppressively converted the vending machines by a wrongful exercise of dominion and control over them to the exclusion of the plaintiffs or in defiance of their right to possession. Schwertfeger answered the complaint, setting forth a general denial of the plaintiffs' allegations.
Following further pleading and discovery, the case proceeded to trial. At the close of the plaintiffs' evidence, Schwertfeger made an oral "motion for summary judgment" which was denied by the trial court. After the conclusion of the trial, the jury returned a verdict in the amount of $750 plus interest at 6% from September 14, 1988, in compensatory damages and $25,000 in punitive damages. Schwertfeger filed a motion for judgment notwithstanding the verdict, a motion for new trial, and a motion for the court to independently reassess the punitive damages award. After post-trial discovery and a hearing to reassess the punitive damages award, the trial judge denied the motions.
 II. Sufficiency of the Evidence
Although Schwertfeger raises several issues concerning the sufficiency of the evidence of conversion, we are unable to review any of those issues.
It is well settled that a motion for directed verdict must be made at the close of all the evidence and that a timely post-trial motion for judgment notwithstanding the verdict must be subsequently made before an appellate court may consider on appeal questions regarding the sufficiency of the evidence to support the jury's verdict. Barnes v. Dale, 530 So.2d 770, 776
(Ala. 1988); Bains v. Jameson, 507 So.2d 504 *Page 324 
(Ala. 1987); Great Atlantic Pacific Tea Co. v. Sealy,374 So.2d 877, 880-82 (Ala. 1979). We have reviewed the record and cannot ascertain therefrom that Schwertfeger moved for a directed verdict at the close of all the evidence. Therefore, this Court is precluded from reviewing Schwertfeger's issues regarding the sufficiency of the evidence.
 III. Evidentiary Issue
Schwertfeger also argues that the trial court erred in permitting the Moorehouses to introduce into evidence a letter from the Moorehouses' attorney to Schwertfeger dated August 29, 1988, because the discovery was not exchanged in accordance with the pretrial order. The trial court allowed an amendment to the Morehouses' exhibit list 13 days before trial in accordance with the pretrial order "to prevent manifest injustice." We note that the trial court also permitted Schwertfeger to call witnesses and use exhibits at trial from the Moorehouses' witness list, even though he had failed to file a witness list. After reviewing the record, we cannot say that the trial court abused its discretion by permitting the Moorehouses to introduce the letter into evidence.
 IV. Jury Charges
Next, we consider Schwertfeger's claim that the trial court erred in refusing his requested jury charges. Although the trial court denied all of Schwertfeger's requested charges, he also denied all of the Moorehouses' charges and instead charged the jury directly from Alabama Pattern Jury Instructions: Civil (1974). We have reviewed the charges requested by Schwertfeger and the charges actually given by the trial court and conclude that the charges as given adequately covered the applicable principles of law.
 V. Punitive Damages
Finally, Schwertfeger argues that the jury should not have awarded punitive damages and that the damages awarded were excessive. Punitive damages are recoverable in a conversion case when the evidence shows legal malice, willfulness, insult, or other aggravating circumstances. Rainsville Bank v.Willingham, 485 So.2d 319 (Ala. 1986). The amount of a punitive damages award is within the sound discretion of the jury, which may consider all attendant circumstances. Roberson v. Ammons,477 So.2d 957, 961 (Ala. 1985). The purpose of a punitive damages award is to punish the wrongdoer, based on the enormity of the wrong, and to prevent similar wrongs from being committed in the future. Id.
After post-trial discovery and a hearing, the trial court ruled that the damages award was not to be reduced or set aside. The trial court's order stated in part:
 "After reflecting on the testimony presented to the jury in this case and reassessing the nature, extent and economic impact of the $25,000.00 award of punitive damages, this Court is strongly inclined to increase the amount of punitive damages awarded against the Defendant by the jury. This Court finds that the jury's verdict was extremely reasonable and will not substitute its judgment at this point for the judgment of twelve citizens from Elmore County. Therefore, the punitive damages award of $25,000.00 will stand."
The trial court, pursuant to Ala. Code 1975, § 6-11-23, conducted the hearing to independently reassess the award of punitive damages. We can find no error in the trial court's refusal to remit the punitive damages award.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, ADAMS and STEAGALL, JJ., concur. *Page 325