ALMON, Justice.
Herman Cartwright brought an action alleging breach of contract and conversion against Empire Gas, Inc. of Belle Mina (“Empire Gas”). A jury awarded Cartwright $100 compensatory damages and $40,000 punitive damages, and the trial court entered a judgment on the verdict. Empire Gas argues that the court erred in overruling its objection to allegedly improper argument by Cartwright’s attorney; in denying its requested jury instruction regarding the imposition of punitive damages against an employer for acts of an employee; and in refusing to order a remittitur of the punitive damages.
In November 1985, Cartwright leased from Empire Gas a 330-gallon propane gas tank to use for heating his home. The lease included a requirement that Cartwright buy twice the capacity of the tank each year, but Empire Gas's manager, Bobby Holder, testified that many of its customers did not purchase the required amount, and the evidence effectively established that Empire Gas had waived the minimum purchase requirement. The evidence was conflicting as to whether Cartwright purchased any gas in 1988: Empire Gas’s employees testified that he did not, but Cartwright and his wife testified that they bought $30 or $35 worth of gas in September or October of that year. Their daughter also testified that she saw Mr. Holder delivering some gas just before Halloween. Mrs. Cartwright paid the annual rental fee for the tank on November 15, 1988.
On December 21, 1988, Holder sent Eddie Harper, an Empire Gas employee, to Cartwright’s house. Holder testified that he instructed Harper to ask Cartwright whether he still wanted the tank, since he was not buying any gas, and Harper also testified that his instructions were to that effect. Mr. and Mrs. Cartwright testified, however, that Harper backed his truck and trailer up the driveway to the tank before he spoke to them. Mr. Cartwright testified that Harper simply said that Holder had instructed him to pick up the tank:
“Eddie Harper told [me] that the boss said while he was over there in that neighborhood, to pick my tank up.
[[Image here]]
“I told him, ‘Bobby knows I paid the rent on that tank a few weeks ago.’
*1350 [[Image here]]
. [H]e told me he didn’t want it to cause no hard feelings. I told him it wouldn’t cause no hard feelings for me, whatsoever. He was just doing his job and doing what his boss told him to do.
“Q. He didn’t want you mad at him?
“A. That’s right.”
Harper took the tank, and Cartwright brought this action.
During closing arguments, the following occurred:
“[Cartwright’s attorney]: I wouldn’t come to court, you couldn’t afford to come to court, for $10.00 an hour.
“[Empire Gas’s attorney]: Your Hon- or, I object to him making that kind of allegation, you couldn’t afford to come to court for $10.00 an hour. It is prejudicial.
“The Court: I will overrule your objection.”
Empire Gas now argues that the statement was an improper reference to the wealth of Empire Gas relative to that of Cartwright and that the overruling of the objection was reversible error. It cites cases such as Stallworth v. Holt, 534 So.2d 1063 (Ala.1988); Hill v. Sherwood, 488 So.2d 1357 (Ala.1986); and Otis Elevator Co. v. Stallworth, 474 So.2d 82 (Ala.1985).
Although the statement serves no proper purpose that is apparent, neither is it apparent that it was so highly prejudicial or inflammatory that the very general objection, “It is prejudicial,” was sufficient to require a reversal of the judgment. The statement, at least when taken out of context, refers more to the expenses of coming to court than to the wealth of Empire Gas. Given the brevity of the remark, the fact that it was not a clear reference to the wealth of Empire Gas, and the generality of the objection, we cannot say that the trial court committed reversible error in overruling the objection. See, e.g., L.W. Johnson & Assocs., Inc. v. Rivers Constr. Co., 532 So.2d 618, 624-25 (Ala.1988).
Empire Gas next argues that the trial court erred in refusing to give its written requested jury instruction number nine, which read:
“9. The Court charges the jury that an employer is not liable for punitive damages for intentional wrongful conduct or conduct involving malice based upon acts or omissions of an employee, for which the employee is liable, except under the following circumstances:
“1. If you are reasonably satisfied from the evidence that the employer knew or should have known of the unfitness of the employee, and employed him or continued to employ him, or used his services without proper instruction with a disregard of the rights or safety of others; then in such event the employer would be liable for punitive damages for the acts or omissions of the employee; or
“2. If you are reasonably satisfied from the evidence that the employer authorized the wrongful conduct of the employee then in such event the employer would be liable for punitive damages for the acts or omission of the employee; or
“3. If you are reasonably satisfied from the evidence that the employer ratified the wrongful conduct of the employee then in such event the employer would be liable for punitive damages for the acts or omission of the employee; or
“4. If you are reasonably satisfied from the evidence that the acts of the employee were calculated to or did benefit the employer then in such event the employer would be liable for punitive damages for the acts or omissions of the employee unless you are reasonably satisfied that the plaintiff knowingly participated with the employee to commit fraud or wrongful conduct with full knowledge of the import of his act.”
Although it includes circumstances not related to the facts of this case, this requested instruction substantially follows Ala. Code 1975, § 6-ll-27(a).
The evidence in this case was such that any error in refusing to give the instruction *1351 was harmless. It was undisputed that Holder wanted Harper to retrieve Cartwright’s tank so that Empire Gas could rent the tank to another customer; thus, Harper’s and Holder’s actions were for the benefit of Empire Gas. Furthermore, it is clear from the verdict that the jury found that Harper’s actions were authorized by Holder, who appears to be the chief operating officer of Empire Gas. Therefore, we will not reverse the judgment for the failure to give instruction number nine. See Rule 45, Ala.R.App.P.
Finally, Empire Gas challenges the amount of the punitive damages. Much of its argument is premised upon portions of § 6-11-23 and -24 that were held unconstitutional in Armstrong v. Roger’s Outdoor Sports, Inc., 581 So.2d 414 (Ala.1991). To the extent that the arguments pertain to proper remittitur practice, see § 6-11-23; Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989); and Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), we see no error in the trial court’s order denying Empire Gas’s motion for a remittitur.[1] The court found that the economic impact of the verdict on Empire Gas was not a factor tending to support a remittitur, particularly since Empire Gas is “a wholly owned subsidiary of Empire Gas of Lebanon, Missouri^] ... is for all intents and purposes an extension of [the] larger corporation^ and does not] function as an independent corporation.” The court also found that none of the relevant factors from Green Oil, supra, or § 6-ll-23(b) showed that the verdict was due to be set aside.
In addition, we note that punitive damages are recoverable in a conversion action when the evidence shows legal malice, willfulness, insult, or other aggravating circumstances, Schwertfeger v. Moore-house, 569 So.2d 322 (Ala.1990). The jury could have found that Empire Gas willfully deprived the Cartwrights of heating fuel for their residence during a period of cold weather. The jury was entitled to disbelieve Holder’s testimony that he told Harper only to ask Cartwright if he still wanted the tank, because there was evidence that Harper did not ask and did not act as though he was asking Cartwright for permission to retrieve the tank. Furthermore, Empire Gas did not offer to refund the annual rental that Cartwright had just paid and did not pay Cartwright for the gas that was in the tank. Under the circumstances, we find no error in the trial court’s denial of a remittitur.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.

. When the notice of appeal was filed in this case, the trial court had not entered an order pursuant to Hammond and its progeny. This Court remanded the cause for entry of such an order, and the trial court entered a proper order denying the request for a remittitur.