Plaintiffs brought actions on the insurance contract and for fraud against Southern Life and Health Insurance Company on each of two $1,000 industrial life insurance policies. Southern Life appeals from the jury award of two $1,000,000 judgments. We reverse and remand.
Mr. Whitman, a 63 year old man with numerous health problems, received two unsolicited $1,000 "instant issue" policies from the defendant, through its soliciting agent, Redding. When Whitman indicated that there must have been a mistake because of his bad health, and, at any rate, he could not afford the premiums, Redding suggested that Whitman's children purchase the policies. Redding filled out the application in Whitman's presence, erroneously stating that the insured was in good health and had not been attended by a physician during the past three years. With Whitman's consent, Redding sold one policy to Samuel and Kathleen Whitman and the other to Rebecca Whitman (who were all aware of the insured's health), naming the purchasers as beneficiaries.
The effective date of the policies was September 1, 1974. The insured died on August 12, 1975. Although Southern Life honored several older policies on the deceased, they denied coverage on these two policies because of the insured's bad health and refunded the premiums. While not found in the insured's file when the policies were approved, Southern Life allegedly had issued a "bad risk" card on the insured.
Plaintiffs filed suits on each policy, asserting a claim on the policies in the amount of $1,000 as Count I, and seeking under Count II $2,500,000 punitive damages for fraud and deceit on the part of the defendant in inducing the plaintiffs to purchase the policies. The actions were consolidated for a jury trial.
At trial, the following evidence of the defendant's financial position was admitted over defendant's objection for the express purpose of aiding the jury in its assessment of punitive damages:
 "Q. Can you tell the jury, how much money, at the end of 1976, that is, December 31st, 1976, was in unassigned funds, or what we call, surplus.
 "A. The total surplus, as of December 31st, 1976, was $7,646,054.00.
 "Q. Is that, December 31st, 1976 surplus figure, the latest figure the Department of Insurance, has?
"A. It is.
 "Q. Can you tell the jury, in accordinace [sic] with their December 31st, 1976, annual statement, what the net income of Southern Life and Health Insurance Company was, after they paid their Federal Income Tax.
 "A. Net income after Federal Income Taxes, for that calendar year, 1976, was $2,539,241.00."
The trial court granted a directed verdict for the defendant on Count I and submitted Count II to the jury. The jury returned two $1,000,000 verdicts for the plaintiffs. Defendant's motion for Judgment Notwithstanding the Verdict or in the alternative for New Trial was denied.
Appellant raises numerous contentions of reversible error. Because of the extreme prejudice created by the evidence of the defendant's wealth, reversal is mandated, and consideration of the remaining errors is pretermitted.
Our cases have long held that evidence of the defendant's wealth is highly prejudicial and, therefore, inadmissible.Alabama Fuel Iron Co. v. Williams, 207 Ala. 99, 91 So. 879
(1921) (dicta); Long v. Seigel, 177 Ala. 338, 58 So. 380
(1912); Southern Car Foundry Co. v. Adams, 131 Ala. 147,32 So. 503 (1901); Ware v. Cartledge, 24 Ala. 622, 60 Am.Dec. 489
(1854). Cf. Miller v. Dacovich, 12 A.B.R. 469 (1978); Pool v.Devers, 30 Ala. 672 (1857); Adams v. Adams, 29 Ala. 433 (1856). These cases recognize no distinction between situations involving compensatory and punitive damages. *Page 1027 
In Ware, the plaintiff was permitted to prove, over objection, that the defendant possessed property valued at $20,000. Reversing the trial court, this court said that if wealth of a defendant is permitted then common justice requires a converse rule to prevail in the case of poor defendants. Justice Ligon wrote that common sense revolts at the adoption of such a rule. "For sad would be the fate of that country, whose laws conceded to the insolvent bully, seducer, or slanderer, the privilege of perpetrating his wrongs with comparative impunity, under assurance that, when sued for his practices, the damages would be graduated to his present ability to pay them, and consequently would be merely nominal. No sound principle of law tolerates such a practice." (Citing cases.) Not only have our cases held that the wealth of a defendant is not admissible, but also have held inadmissible the poverty of a plaintiff. In Pool this court said that a plaintiff's being poor is not a legitimate matter for the consideration of the jury in any point of view.
While we recognize that other jurisdictions do permit the introduction into evidence the wealth of a defendant, we adhere to our rule of excluding evidence of wealth of the defendant. Even though the rule was announced by this court in 1854, we opine that it is sound today — and for the same reason. Liability for damages cannot be determined by the economic condition of either party. Cf. Allison v. Acton-Etheridge CoalCo., Inc., 289 Ala. 443, 268 So.2d 725 (1972).
For permitting evidence of wealth of the defendant to be introduced at the trial, the judgment is reversed, the cause is remanded, and a new trial is ordered.
REVERSED AND REMANDED.
BLOODWORTH, ALMON and EMBRY, JJ., concur.
JONES, J., concurs in the result.