397 So.2d 125 (1981)
RIDOUT'S-BROWN SERVICE, INC., a Corporation
v.
Dora Elizabeth HOLLOWAY and Juanita Jackson.
79-651.
Supreme Court of Alabama.
April 17, 1981.
J. Glynn Tubb of Eyster, Eyster, Key & Tubb, Decatur, for appellant.
Jerry R. Knight, Decatur, for appellees.
*126 PER CURIAM.
This cause was initiated by Plaintiffs-Appellees on June 21, 1978, in the Circuit Court of Morgan County, Alabama. Plaintiffs' original complaint alleged: 1) willful misrepresentation and deceit; 2) breach of contract; 3) intentional infliction of emotional distress; and 4) negligent infliction of emotional distress, concerning Defendant's conduct relative to the preparation and embalmment of the body of Charles Ernest Jackson, Plaintiffs' deceased brother. On November 20, 1979, the trial court entered a pre-trial order allowing Plaintiffs to proceed upon their allegations of willful misrepresentation and deceit.
Trial by jury was commenced on January 21, 1980. Appellant's motions for a directed verdict at the end of Plaintiffs' evidence, and at the trial's termination, were overruled. On January 23, 1980, the jury returned a verdict for the Plaintiffs in the amount of $220,000, and final judgment was entered thereon. Defendant's subsequent motion for a new trial, or, in the alternative, judgment n.o.v., was denied. We affirm.
We are unpersuaded by Appellant's contentions that the trial court erred in denying its motions for a directed verdict, judgment notwithstanding the verdict, or a new trial. In determining the correctness of the trial court's refusal of an affirmative instruction for the Defendant, an appellate court will consider evidence in an aspect most favorable to the plaintiff. Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224 (1944); Aircraft Sales & Service, Inc. v. Gantt, 255 Ala. 508, 52 So.2d 388 (1951); F. W. Woolworth Co. v. Ney, 239 Ala. 233, 194 So. 667 (1940).
There is a presumption in favor of a verdict for the plaintiff and in favor of the trial judge's refusal to grant a directed verdict. Alabama Great Southern R. Co. v. Moundville Motor Co., 241 Ala. 633, 4 So.2d 305 (1941). Our careful review of the record reveals considerably more than a mere scintilla of evidence to go to the jury in support of Plaintiffs' allegations. Consequently, denial of Defendant's request for a directed verdict was not error. Saunders System Birmingham Co. v. Adams, 217 Ala. 621, 117 So. 72 (1928). For a case involving a fact situation somewhat similar to the instant case, see Meyer v. Nottger, 241 N.W.2d 911 (Iowa 1976).
While we are cognizant of the mandate that a party charging fraud must prove it by clear and convincing evidence, we are convinced that the evidence of record amply supports the jury's verdict for the Plaintiffs on their count of deceit and willful misrepresentation. Hughes v. Cartwright, 222 Ala. 4, 130 So. 550 (1930); Decker v. State National Bank, 255 Ala. 373, 51 So.2d 538 (1951); Indemnity Ins. Co. of North America v. Holiway, 233 Ala. 100, 170 So. 329 (1936).
Of Appellant's other contentions, we discern only one which merits our discussion: The excessiveness vel non of the verdict. We recognize that, pursuant to Code 1975, § 12-22-71, where the only ground of reversal is the excessiveness of damages, the appellate court has the power to determine the proper amount of recovery and affirm the judgment, subject to the filing of a remittitur of the amount in excess thereof. Avery Freight Lines v. Stewart, 258 Ala. 524, 630 So.2d 895 (1953); Gulf States Steel Co. v. Comstock, 17 Ala.App. 430, 85 So. 305 (1920). Necessarily, however, the invocation of this statutory authority is dependent upon our holding that the presumption of correctness of the jury verdict is overcome by a clear showing that the amount of the verdict is the product of passion, bias, prejudice, corruption, or other improper motive or cause. Vest v. Gay, 275 Ala. 286, 154 So.2d 297 (1963).
The totality of the circumstances, particularly the relationship of the parties, in which the next of kin of the deceased reposed total confidence and trust in the funeral director, coupled with the Defendant's deliberate falsification of the condition of the corpse in order to spare the Defendant the time and trouble of preparing the remains for private viewing by the *127 family and acquaintances, evince a callous disregard for the natural and ordinary sensibilities of the Plaintiffs and amply justify the amount of the award.
AFFIRMED.
All the Justices concur, except JONES, J., who concurs specially.
JONES, Justice (concurring specially).
At first, I was inclined to affirm conditionally, subject to a remittitur of a substantial amount of the award. I have been persuaded by my colleagues on the Bench, however, to join in a unanimous vote for the Per Curiam opinion. Indeed, the facts before us are extreme. Punitive damages are clearly authorized. I do not quarrel with the proposition that, within the context of our religious heritage and cultural values, the "Funeral Home" occupies one of the most exalted positions of trust among our institutions.
It matters not the station in life of the departed; however wretched his earthly existence; and whatever may be the fate of his soul; we tend to share the common belief that death is the ultimate victory, and that "Rest in Peace" is as much a solace to the next of kin as an eternal hope for the dead. Surely, one who merchandises the wares and services of these last rites must be held to the highest awareness of his customer's sensibilities, and must discharge his duties with tenderness and forthrightness.
Here, the evidence strongly supports a jury finding that the funeral home, acting with indifference and motivated by self-gain, took undue advantage of the delay of several hours between the time of death and the pick up of the corpse to conceal the remains in a disaster pouch (or "crash sack") and tell his next of kin that "... I don't think you want to see him because the left side of his face is eaten up with maggots." Add to this the further inference that except for a happenstance conversation between Mrs. Holloway and the county coroner (who subsequently confronted the funeral director with his firsthand knowledge of the true undeteriorated condition of the body), the sisters of the deceased would not have learned of the cruel, intentional ploy which was obviously intended to spare the Defendant of its obligation to prepare the remains for respectable viewing as requested by the family.
That the law perforce furnishes not only a remedy but also allows substantial punitive damages for such a wrong goes without saying. I suppose what troubles me is the unguided discretion accorded in both the fact finding process and the judicial review that fixes the amount of punitive damages. The current system furnished virtually no yardstick for measuring the amount of the award over against the purpose of the award. We are all in agreement that the award in the instant case ought to be large enough to hurt. It ought to sting in order to deter; this is its purpose. But only in the rarest of cases should it be large enough to destroy; this is not its purpose.
Which of the twomerely to hurt or to destroydoes the $220,000 award accomplish here? I can readily agree that the gravity of the wrong, abundantly supported by the proof of record, justifies the full amount of this award; and, this being the sole cognizable standard, I am constrained to concur in the Per Curiam affirmance. But, still, in my opinion, something is missing; this standard is deficient. To the "gravity of the wrong" element should be added this inquiry: What (i. e., how much) will it take to punish this Defendant? The purpose of this two-fold test is to particularize both the wrongful act and the wrongdoer. Only when both elementsthe gravity of the wrongful act and the amount of damages necessary to punish the particular defendantare considered and weighed one against the other, can the award be rationally adjudged to accomplish the ultimate purpose of exemplary damages.
The problem, then, is how to infuse the second of these elements into the equation. The firstthe extent and degree of the wrongis supplied in the liability fixing stage of the proceedings. Because it impermissibly impugns the fact finding process regarding liability, however, evidence of the *128 defendant's financial worth is inadmissible. Southern Life and Health v. Whitman, 358 So.2d 1025 (Ala.1978). The reliability of the fact finding process cannot be sacrificed in an unbifurcated proceeding by allowing evidence on the issue of damages which may unfairly influence the fact finder in resolving the issue of liability.
Thus, short of a bifurcation with respect to the issues of liability and damages, the answer is to permit the injection of the second elementthe adequacy vel non of the damagesin a post-judgment proceeding by way of judicial review. For example, if the Defendant in the instant case were the individual mortician earning $20,000 per year, this fact should be admissible in support of a post-judgment motion on the issue of the validity of the award. The gravity of the wrong may be the same, whether the defendant is a salaried employee or a multimillion dollar corporation, but, in the case of the former, the $220,000 verdict would be far out of proportion to its intended purpose. What it takes to punish the one bears no relationship to what it takes to punish the other.
What I am saying is that, in the totality of the system, we must preserve the reliability of the fact finding process for adjudging liability and, at the same time, improve the reliability of the damage assessment process in order to fit the punishment (the amount of punitive damages) to the offensive conduct and the offender.