On April 17, 1986, Green Oil Company filed a two-count complaint against Dean Hornsby and Sheila Hornsby, d/b/a Hornsby's Grocery, for the recovery of certain personal property, including gasoline pumps and an underground tank, and on an open account for gasoline delivered and not paid for. The Hornsbys denied the debt on open account but admitted that the personal property belonged to Green Oil Company, and they filed a counterclaim alleging breach of contract and fraud. Green Oil Company filed a general denial to the counterclaim. The case was tried to a jury. The jury awarded Green Oil Company $2,000 and awarded the Hornsbys compensatory damages of $14,704.06 and punitive damages of $150,000. After Green Oil Company appealed to this Court, the case was remanded to the trial court for a hearing on the question of excessiveness of the jury verdict, pursuant to Hammond v. Cityof Gadsden, 493 So.2d 1374 (Ala. 1986). Following the Hammond
hearing, the trial court ordered a new trial conditioned upon the Hornsbys' refusal to accept a remittitur of $125,000 in punitive damages. The Hornsbys accepted the trial court's remittitur of $125,000, reserving the right to question the trial court's decision on remittitur in the event Green Oil Company continued to prosecute the appeal pending in this Court.
We have searched the record and have been unable to find where Green Oil Company filed a motion for a directed verdict at any time during the trial of this case. Therefore, Green Oil Company's first issue, whether the trial court erred in refusing to grant its motion for a judgment notwithstanding the verdict, cannot be considered by this Court. Rule 50(b), Ala.R.Civ.P., provides in pertinent part:
 "Whenever a motion for a directed verdict made at the close of all the evidence *Page 220 
is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 30 days after entry of judgment, a party who has moved for a directed verdict may file a motion to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict. . . ."
This Court has held that the filing of a motion for a directed verdict is a prerequisite to the filing of a motion for a judgment notwithstanding the verdict. Rush v. Eason Plumbing Electrical Contractors, Inc., 361 So.2d 516 (Ala. 1978);Sunshine Homes, Inc. v. Newton, 443 So.2d 921 (Ala. 1983);Black v. Black, 469 So.2d 1288 (Ala. 1985).
Green Oil Company argues that it was error for the trial court to refuse to grant a new trial because the verdict was against the great weight and preponderance of the evidence. The decision of a trial court refusing to grant a new trial on the ground that the verdict is contrary to the great weight and preponderance of the evidence will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. Cobb v. Malone, 92 Ala. 630, 635,9 So. 738, 740 (1891), overruled on other grounds, Jawad v. Granade,497 So.2d 471 (Ala. 1986). Suffice it to say, that we are not clearly convinced that it was wrong and unjust for the trial court not to grant a new trial on the basis that the verdict was against the great weight and preponderance of the evidence. The evidence of fraud on the part of Green Oil Company was sufficient to support the verdict.
Green Oil Company next argues that it was error for the trial court to refuse to set aside the award of punitive damages. We disagree.
Reviewing the evidence most favorably toward the Hornsbys, as our standard of review requires, we note the following: There was evidence of a representation to the Hornsbys by Green Oil Company, that Green Oil Company would charge the Hornsbys seven cents a gallon above Green Oil Company's cost of purchasing gasoline. There is evidence that Green Oil Company never intended to charge the Hornsbys no more than seven cents a gallon above Green Oil Company's cost for gasoline; therefore, the jury could have found that that statement was false. There is evidence that initially Green Oil Company did charge the Hornsbys approximately seven cents a gallon above its cost for gasoline; however, this changed.
On December 27, 1985, Green Oil Company charged the Hornsbys 13.4 cents per gallon above Green Oil Company's cost. This difference increased dramatically during 1986, and the following was the difference between the per gallon cost charged to the Hornsbys and the amount paid by Green Oil Company on the specified dates: January 9 — 16.4 cents; January 16 — 17.65 cents; January 23 — 18.6 cents; January 30 — 19.7 cents; February 6 — 20.25 cents; February 13 — 24.2 cents; February 20 — 27.5 cents; February 27 — 29.25 cents.
There was evidence of a representation made by Green Oil Company to the Hornsbys; there was evidence that the representation was false and that Green Oil Company knew it to be false; and there was evidence from which the jury could reasonably infer that the representation was made by Green Oil Company with the intent and purpose of deceiving the Hornsbys.
The Hornsbys were owners and operators of Hornsby's Grocery Store. They had never been in the grocery store or gasoline business before. When they started this business, they were dealing with an Amoco supplier from Camp Hill. They were satisfied with their relationship with this dealer, and they changed because of the representations made to them by partners of Green Oil Company. There is credible evidence that Mrs. Hornsby did not know how to ascertain the wholesale price of gasoline prior to the filing of this lawsuit *Page 221 
by Green Oil Company, although there is evidence that she then learned how to ascertain this price and has done so frequently since this suit was filed. There is evidence to support a finding of every element of the cause of action for fraud in accordance with the trial court's thorough instructions to the jury. These instructions were not objected to by Green Oil Company; and after allowing all reasonable presumptions of its correctness, we find that the preponderance of the evidence against the jury verdict is not so decided as to clearly convince this Court that it is wrong and unjust.
As shown from the facts stated above, there was evidence to support an award of punitive damages.
The trial court in its Hammond order found the following:
 "There is ample evidence to support the verdict for the Hornsbys for compensatory damages, and there is ample evidence to support a finding by the jury that [Green Oil Company] willfully and maliciously perpetrated a legal fraud upon the Hornsbys. The only question which arises from the evidence and surrounding circumstances in this case is whether the punitive damages award of $150,000.00 is excessive. We find that it is excessive, for the reasons that follow.
 "The evidence supports a finding that [Green Oil Company was] very culpable and that the wrong to the Hornsbys was substantial. But in fixing the punishment, we must consider what amount is appropriate to prevent similar wrongs in the future, and in that connection we must ask what effect a large punitive damages award will have on [Green Oil Company]. While we are prohibited from considering the worth of the defendants, we believe that it is appropriate to note that [Green Oil Company] is a relatively small, independent distributor of refined petroleum products which is owned and operated as a partnership out of Union Springs by the two Green brothers, Michael and Phillip. [Green Oil Company] is not incorporated, and any judgment against [Green Oil Company] therefore becomes a personal judgment against the Greens, jointly and severally. . . . [I]t doesn't take a large verdict to be heard and felt a few miles down the road in Union Springs by two local individuals.
 "Accordingly, the Court finds that the punitive damages award is excessive because of its effect upon the Greens, and that it should be reduced from $150,000.00 to $25,000.00. . . .
 "[The Hornsbys], then, shall either accept a remittitur in the amount of $125,000.00, or the Court will order a new trial."
As previously stated in this opinion, the Hornsbys did accept the $125,000 remittitur subject to our review of the remittitur in the event that Green Oil Company persisted in its appeal.
In City Bank of Alabama v. Eskridge, 521 So.2d 931, 932-33
(Ala. 1988), Justice Jones, writing for the Jones Division of this Court, stated as follows:
 "The right to a trial by jury in civil cases is guaranteed by § 11, Alabama Constitution; therefore, a jury verdict will not be set aside unless it is flawed, thereby losing its constitutional protection. Upon finding a verdict to be flawed, the trial court, pursuant to A.R.Civ.P. 59(f), and this Court, pursuant to Code 1975, § 12-22-71, may interfere with it. At what point, however, will a damages award require a finding of a flawed jury verdict?
 " 'First, it may include or exclude a sum which is clearly recoverable or not as a matter of law, or which is totally unsupported by the evidence, where there is an exact standard or rule of law that makes the damages legally and mathematically ascertainable at a precise figure. In these situations, a trial court may, and should, reduce or increase the amount of the verdict to reflect the amount to which the parties are entitled as a matter of law. Second, a jury verdict may be flawed because it results, not from the evidence and applicable law, but from bias, passion, *Page 222 
prejudice, corruption, or other improper motive. . . .'
 "Hammond v. City of Gadsden, 493 So.2d 1374, 1378
(Ala. 1986)."
Thus, the invocation of the trial court's authority under Ala.R.Civ.P. 59(f) to determine the proper amount of recovery and to deny a new trial, subject to filing of a remittitur of the amount in excess of the proper amount, is dependent upon the trial court's holding that the presumption of correctness of the jury verdict has been overcome by a clear showing that the amount of the verdict is excessive. It is also well understood that in considering the adequacy or excessiveness of a verdict, each case must be determined on its own facts, and that neither the trial court, nor this Court, may substitute its judgment for that of the jury. City Bank ofAlabama v. Eskridge, supra; Hammond v. City of Gadsden, supra.
Because the purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter the wrongdoer and others from committing similar wrongs in the future, the proper amount of punitive damages rests largely within the jury's discretion. However, although punitive damages need bear no particular relationship to actual damages, they, nonetheless, must not exceed an amount that will accomplish society's goals of punishment and deterrence.Maryland Casualty Co. v. Tiffin, 537 So.2d 469 (Ala. 1988);City Bank of Alabama v. Eskridge, supra; Roberson v. Ammons,477 So.2d 957 (Ala. 1985).
What amount is sufficient to punish Green Oil Company and to deter it, and others similarly situated, from committing similar acts in the future? Traditionally, the jury has been afforded a great deal of discretion in assessing punitive damages. Roberson v. Ammons, supra. The exercise of that discretion is, of course, subject to judicial review to insure that it is not the result of bias, passion, prejudice, corruption, or other improper motive. City Bank of Alabama v.Eskridge, supra. The trial court in the case at issue found that the verdicts were in no way affected by bias, passion, prejudice, corruption, or other improper motive or conduct. This Court has recognized, however, that even though a jury verdict may not be excessive because it is the result of an improperly functioning jury, it is possible for a verdict to be excessive even when it is the result of a properly functioning jury. See City Bank of Alabama v. Eskridge, supra. For example, in assessing punitive damages, the jury is not allowed to consider the financial position of the defendant, Southern Life Health Ins. Co. v. Whitman, 358 So.2d 1025 (Ala. 1978). The defendant's financial position is, however, a consideration essential to a post-judgment critique of a punitive damages award. City Bank of Alabama v. Eskridge, supra; see, also,Hammond v. City of Gadsden, supra. Bearing in mind that punitive damages must not exceed an amount that will accomplish society's goals of punishment and deterrence, it is possible for a jury to hear the evidence in the case, make findings of fact, correctly apply the law, and still, albeit unwittingly, assess damages that bear no reasonable relationship to the accomplishment of those goals. Justice Jones recognized this problem in his opinion concurring specially in Ridout's-BrownService, Inc. v. Holloway, 397 So.2d 125, 127-28 (Ala. 1981):
 "That the law perforce furnishes not only a remedy but also allows substantial punitive damages for such a wrong goes without saying. I suppose what troubles me is the unguided discretion accorded in both the fact finding process and the judicial review that fixes the amount of punitive damages. The current system furnished virtually no yardstick for measuring the amount of the award over against the purpose of the award. We are all in agreement that the award in the instant case ought to be large enough to hurt. It ought to sting in order to deter; this is its purpose. But only in the rarest of cases should it be large enough to destroy; this is not its purpose.
 "Which of the two — merely to hurt or to destroy — does a $220,000 award accomplish here? I can readily agree that *Page 223 
the gravity of the wrong, abundantly supported by the proof of record, justifies the full amount of this award; and, this being the sole cognizable standard, I am constrained to concur in the Per Curiam affirmance. But, still, in my opinion, something is missing; this standard is deficient. To the 'gravity of the wrong' element should be added this inquiry: What (i.e., how much) will it take to punish this Defendant? The purpose of this two-fold test is to particularize both the wrongful act and the wrongdoer. Only when both elements — the gravity of the wrongful act and the amount of damages necessary to punish the particular defendant — are considered and weighed one against the other, can the award be rationally adjudged to accomplish the ultimate purpose of exemplary damages. [Emphasis in the original.]
 "The problem, then, is how to infuse the second of these elements into the equation. The first — the extent and degree of the wrong — is supplied in the liability fixing stage of the proceedings. Because it impermissibly impugns the fact finding process regarding liability, however, evidence of the defendant's financial worth is inadmissible. Southern Life Health Ins. Co. v. Whitman, 358 So.2d 1025 (Ala. 1978). The reliability of the fact finding process cannot be sacrificed in an unbifurcated proceeding by allowing evidence on the issue of damages which may unfairly influence the fact finder in resolving the issue of liability.
 "Thus, short of bifurcation with respect to the issues of liability and damages, the answer is to permit the injection of the second element — the adequacy vel non of the damages — in a post-judgment proceeding by way of judicial review. For example, if the Defendant in the instant case were the individual mortician earning $20,000 per year, this fact should be admissible in support of a post-judgment motion on the issue of the validity of the award. The gravity of the wrong may be the same, whether the defendant is a salaried employee or a multimillion dollar corporation, but, in the case of the former, the $220,000 verdict would be far out of proportion to its intended purpose. What it takes to punish the one bears no relationship to what it takes to punish the other.
 "What I am saying is that, in the totality of the system, we must preserve the reliability of the fact finding process for adjudging liability and, at the same time, improve the reliability of the damages assessment process in order to fit the punishment (the amount of punitive damages) to the offensive conduct and the offender." (Emphasis added.)
The following could be taken into consideration by the trial court in determining whether the jury award of punitive damages is excessive or inadequate:
 "(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the actual or likely harm is slight, the damages should be relatively small. If grievous, the damages should be much greater.
 "(2) The degree of reprehensibility of the defendant's conduct should be considered. The duration of this conduct, the degree of the defendant's awareness of any hazard which his conduct has caused or is likely to cause, and any concealment or 'cover-up' of that hazard, and the existence and frequency of similar past conduct should all be relevant in determining this degree of reprehensibility.
 "(3) If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, so that the defendant recognizes a loss.
 "(4) The financial position of the defendant would be relevant.
 "(5) All the costs of litigation should be included, so as to encourage plaintiffs to bring wrongdoers to trial.
 "(6) If criminal sanctions have been imposed on the defendant for his conduct, this should be taken into account in *Page 224 
mitigation of the punitive damages award.
 "(7) If there have been other civil actions against the same defendant, based on the same conduct, this should be taken into account in mitigation of the punitive damages award."
Aetna Life Insurance Co. v. Lavoie, 505 So.2d 1050, 1062 (Ala. 1987), Houston, J., concurring specially.
Evidence was presented to the trial court before it ruled on the Hammond remand. This included evidence of Green Oil Company's and the partners' worth. Thereafter, the trial court found that the punitive damages award was excessive because of its effect upon Green Oil Company and the individual partners thereof. Thus, Green Oil Company overcame the presumption of correctness that attached to the jury's award of punitive damages. Therefore, the judgment against Green Oil Company in the amount of $39,704.06 plus one-half of the costs and the judgment against the Hornsbys in the amount of $2,000 are affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
MADDOX, J., concurs specially.
ALMON, J., concurs in the result.