COOK, Justice.
Charles E. Ingram, the plaintiff in an action pending in the Chambers Circuit Court, seeks a writ of mandamus directing the trial court to vacate its partial summary judgment in favor of the defendant Liberty National Life Insurance Company and to remove the limitation it had placed on Ingram’s right to discovery. We grant the petition in part and dismiss it in part.
Liberty National, an Alabama corporation headquartered in Birmingham, formerly marketed a life-insurance policy known as the “LifePlus” policy. Liberty National’s agents represented to potential purchasers of the LifePlus policy that if the purchaser paid the policy’s monthly premiums for 10 years, then the policy’s face value would be “paid up” at the end of the 10-year period. This representation was false.
Lane Mitcham and 30 other purchasers of the LifePlus policy sued Liberty National in Chambers County, alleging a pattern and practice of misrepresentation and suppression in the sale of the policy. Mitcham v. Liberty National Life Ins. Co., CV-95-290. Mitcham and the other plaintiffs negotiated a settlement with Liberty National, and Liberty National moved for a determination that the punitive-damages award provided by the settlement agreement was sufficient to adequately punish Liberty National for its alleged misconduct. After conducting an evidentiary hearing, Judge Howard F. Bryan entered an “order and final judgment” in Mitcham on December 29, 1995; that “order and final judgment” stated, in pertinent part:
“Plaintiffs contend that the misconduct of [Liberty National] revolves around alleged misrepresentations. and suppression concerning [life insurance policies]. Specific allegations deal with assurances that the policies would be paid up in a defined period, generally 10 years. The misconduct is alleged to constitute fraud both by affirmative misrepresentations and by intentional suppression.
“It is further contended by plaintiffs and claimants that [Liberty National] taught and encouraged its agents to ... promote sales of such policies and was aware that its agents were conducting themselves in this manner and did not take appropriate action to prevent them from so doing and that defendant authorized, ratified, and confirmed such wrongful conduct of its agents.
“[Liberty National] specifically denies the allegations against it....
“For purposes of this motion, the court assumes that Plaintiffs could prove all of their allegations and [that Liberty National] could prove ... its contentions. It is further noted that Liberty National does not admit any liability, but rather entered into settlements in an effort to buy its peace and to avoid further expense.
[[Image here]]
“This court has been guided in its considerations by the factors outlined in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989); Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); and the factors set forth in Ala.Code 1975, § 6-11-23.
“The court also deems it to be significant that in these cases, unlike many other cases involving the award of punitive damages, Plaintiffs actually received something of value for the monies expended by them — i.e., insurance which would pay benefits in the event of their deaths.
“This court has also reviewed evidence relating to the financial status of Liberty National. This court is aware of the assets of [Liberty National] and of the alleged wrongdoing in numerous other cases resolved by either an award of punitive damages or settlements both *565 in this judicial circuit and in other judicial circuits throughout the state of Alabama. ...
“In view of these factors and others, the court is of the opinion that Liberty-National should not be subjected to punitive damages in excess of the amount that would adequately punish it and accomplish fully society’s interest in deterrence ....

“This court is firmly convinced that •payment of the amounts which Liberty National has agreed to pay, as well as its other costs incurred, is sufficient to punish it for alleged intent, scheme, and pattern and practice of wrongful conduct ... and to deter it and others from any similar misconduct in the future.

“The court accordingly finds that the cumulative amount which Liberty National has paid or agreed to pay is adequate, when coupled with expenses incurred, to fully punish and deter Liberty National with respect to any and all of its complained of conduct and misrepresentations which have occurred to date, including Liberty National’s employing, training, and supervising any of its agents with respect to the sale of life insurance such as that described herein-above (whether through direct responsibility, respondeat superior liability, or otherwise). The court further concludes that the imposition of additional punitive damages against Liberty National for such alleged misconduct, scheme, and pattern and practice in excess of the amount already paid in the settlements ..., whether in this case or any other proceeding, would constitute du-plicative, multiple, and unjust punishment.”
Mitcham v. Liberty Nat’l Life Ins. Co., CV-95-290, Chambers Circuit Court (emphasis added).[1]
Charles Ingram, the petitioner here, purchased a Liberty National LifePlus policy, and he, too, learned that his policy would not be “paid up” at the end of 10 years. Ingram sued Liberty National in the Chambers Circuit Court on March 29, 1996, for compensatory and punitive damages, alleging fraud, deceit, and fraudulent suppression. Ingram filed his lawsuit approximately three months after Judge Bryan’s “order and final judgment” in Mitcham had been filed in the same court.
Liberty National moved for a partial summary judgment on Ingram’s punitive-damages claim. Liberty National, relying on the final judgment in Mitcham, argued that any punitive-damages award against it in Ingram’s action would be excessive as a matter of law and would violate its constitutional right to due process. Ingram opposed the motion, arguing that his rights had not been adjudicated by the judgment in Mitcham.
After conducting a hearing, Judge Bryan granted Liberty National’s motion, entering a partial summary judgment holding that Liberty National had been adequately punished for its misconduct regarding the LifePlus insurance policy and noting that Liberty National was no longer selling the LifePlus policy:
“Consequently, the court is of the opinion that [Ingram] should not be allowed to offer proof toward the end of recovering punitive damages in connection with the sale and marketing of the policies in question. However, the court is also of the opinion that [Ingram] should be allowed to introduce testimony in support of any punitive damages which arise from the defendant’s conduct solely toward him. That is to say, conduct which was directed toward [Ingram].
“Is it therefore ordered, adjudged, and decreed that [Ingram] may not recover punitive damages in this case which are not the result of conduct di *566 rectly specifically at him. Consequently [Ingram] is limited in discovery concerning punitive damages.”
Ingram moved for a reconsideration of the partial summary judgment or, in the alternative, for the court to alter, amend, or vacate that judgment, or to otherwise grant relief therefrom. On June 23, 1999, Judge Dale Segrest, another judge serving the same judicial circuit, heard arguments on Ingram’s motions and held:
“In connection with this case and numerous other cases arising out of the same general background, the undersigned judge deferred to Judge Howard Bryan a number of years ago so that all the cases could proceed under the guidance of one judge. When the present case came to the attention of the undersigned judge earlier this year, this judge was not aware ... that the facts giving rise to the case paralleled the numerous other cases in which this judge had deferred to Judge Bryan.
“Before the hearing that was scheduled today, Judge Bryan entered an order [on June 1, 1999,] granting partial summary judgment.... The order granting the partial summary judgment relief is a somewhat unusual order in that it excludes punitive damages in this case on the theory that [Liberty National] has been punished enough for the kind of misconduct that resulted in the numerous lawsuits against [it], most of which have been disposed of earlier. At this point, [Ingram has] sought no relief in appellate courts in connection with the partial summary judgment. The undersigned judge asked [Ingram] to identify the basis of punitive damages in facts that were peculiar to [Ingram] and not shared by other plaintiffs in similar suits. The facts described appear to be precisely the same facts that would have been the basis for all of the lawsuits against [Liberty National] in the ‘vanishing premium’ cases. The undersigned judge has no intention of countermanding the partial summary judgment or allowing [Ingram] to circumvent the partial summary judgment. If [Ingram] wishes relief from that order, [he] must seek it in the appellate court.”
Ingram has petitioned this Court for a writ of mandamus directing Judge Bryan to vacate his partial summary judgment in favor of Liberty National and to remove the limitation he had placed on Ingram’s right to discovery.
A petition for the writ of mandamus is the appropriate method for challenging a trial court’s ruling on a discovery issue, and, despite the wide discretion given the trial court in ruling on discovery matters, the writ will issue if the petitioner shows that the trial court has abused that discretion. Ex parte Steiner, 730 So.2d 599 (Ala.1998); Ex parte Windom, 763 So.2d 946 (Ala.2000).
Judge Bryan’s order reads:
“Consequently, the court is of the opinion that [Ingram] should not be allowed to offer proof toward the end of recovering punitive damages in connection with the sale and marketing of the policies in question. However, the court is also of the opinion that [Ingram] should be allowed to introduce testimony in support of any punitive damages which arise from [Liberty National’s] conduct solely toward him. That is to say, conduct which was directed toward [Ingram].”
Ingram asks this Court to direct Judge Bryan to vacate this portion of his order because, says Ingram, this Court has consistently held that, given the heavy burden of proving fraud, a plaintiff alleging fraud must be given great latitude in conducting discovery; thus, argues Ingram, he is entitled to an order requiring Judge Bryan to vacate that portion of his order limiting Ingram’s discovery.
We acknowledge the difficulties with which Ingram must contend in order to prove his claims against Liberty National. Although these difficulties do not pres *567 ent insurmountable obstacles, we hold that the trial court may order Liberty National to provide Ingram with requested discovery items, as well as with items provided to the plaintiffs in Mitcham, in order to aid Ingram in the discovery process. If Ingram contends that further discovery is required, he may provide the trial court with a basis for his further requests and the trial court may rule accordingly.
“A writ of mandamus is an extraordinary remedy, and it will be ‘issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal. Ex parte Drill Parts & Serv. Co., 590 So.2d 252 (Ala.1991).”
Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala.1998).
The trial court has not ruled on Ingram’s allegations that Liberty National engaged in conduct peculiar to Ingram that would support a punitive-damages award. Ingram has no clear legal right to relief with regard to his assertion that the trial court erred in disallowing proof of Liberty National’s conduct “in connection with the sale and marketing” of the Life-Plus policy unless that conduct was specifically directed toward Ingram, and, as to that assertion, his mandamus petition is premature. If Ingram’s discovery reveals a valid basis for the imposition of additional punitive damages against Liberty National, and if Ingram moves the trial court to amend its order in that regard and the trial court refuses, then Ingram may seek review at that time.
As it relates to the issue whether, pursuant to the judgment in Mitcham, the trial court correctly prohibited any further award of punitive damages against Liberty National, the petition is dismissed as premature. As it relates to the issue of the trial court’s limiting Ingram’s discovery, the petition is granted.
PETITION GRANTED IN PART AND WRIT ISSUED; PETITION DISMISSED IN PART.
HOOPER, C.J., and MADDOX, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
HOUSTON and SEE, JJ., dissent.

. Mitcham and the other plaintiffs initially sought class certification; however, the trial court held that, in light of the evidence and the terms of the settlement agreement, the plaintiffs would not be prejudiced by a dismissal of the class-action claims.