Introduction
I concur in the rationale of the main opinion except as to the discussion in that opinion of the discoverability and relevance of evidence of Vulcan's financial condition in the context of aHammond/Green Oil analysis.[5] Even as to that issue, however, I agree with the result reached by the main opinion — that any information concerning Vulcan's financial condition other than what it already has produced or promised to produce is not properly discoverable. More than enough information (including, for example, ample information concerning Vulcan's income and net worth) to allow the plaintiff to address Vulcan's financial condition in a Hammond/GreenOil hearing already has been made available or promised by Vulcan. The plaintiffs remaining discovery requests in this regard are unduly broad and burdensome.
It is on this basis that I believe the result reached by the main opinion can and should rest.
I decline to join the main opinion to the extent it goes further to explain that any information concerning Vulcan's financial condition would necessarily be irrelevant in aHammond/Green Oil hearing.
In Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989), the Court established seven factors that, as a matter of state law, a trial court may consider in a postjudgment review of a jury's punitive-damages award. Factor number "4" is "the financial position *Page 1270 
of the defendant." 539 So.2d at 223. The analysis in the main opinion is based on the fact that the defendant in this case disavowed any reliance on this particular factor as a basis for a reduction of the punitive-damages award, even though it sought a reduction of that award on the basis of several other factors identified in Green Oil.
By disavowing any reliance on its financial condition, the defendant essentially stipulates that its financial condition is not so weak as to warrant a reduction in a punitive-damages award of a given amount. That is altogether different than stipulating that its financial condition is not so strong as to warrant maintaining the award at the level set by the jury — or at least at a greater level than that to which the trial court, in the absence of any knowledge of a defendant's financial condition, might be inclined to reduce the award. To hold otherwise, which is the effect of the main opinion, puts the defendant in the self-serving position of stipulating that some reduced award amount being considered by the trial court will still be large enough to serve its purpose. It is the plaintiff, not the defendant, who naturally has the interest in seeing that that is true. Logically, it is only the plaintiff who should be in the position of stipulating that a reduction of a punitive-damages award being considered by the trial court will still leave the award at a high enough level.
 Analysis
Most states do not wait until a post-judgment phase to allow the introduction of evidence of a defendant's financial condition. See, e.g., City of Newport v. Fact Concerts,Inc., 453 U.S. 247, 270 n. 31, 101 S.Ct. 2748,69 L.Ed.2d 616, and accompanying text (1981) (citing Restatement(Second) of Torts § 908(2) (1979), and D. Dobbs,Law of Remedies § 3.9, pp. 218-19 (1973), for the proposition that "evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded");[6] see also William A. Schroeder and Jerome A. Hoffman, Alabama Evidence
§ 4:21 (3d ed. 2006) (noting that Alabama is "unlike most jurisdictions" in "not permit[ting] the jury to receive evidence of a defendant's wealth or lack of it `during the liability phase of the trial for the purpose of proving the amount of punitive damages that should be assessed.'" (citations omitted)).
In Alabama, however, we take the position (wisely, it would seem) that because it would impugn the fact-finding process regarding liability, evidence of the defendant's financial worth is inadmissible during the liability phase of the case.See, e.g., Southern Life Health Ins. Co. v.Whitman, 358 So.2d 1025, 1026-27 (Ala. 1978). We therefore refrain from any attempt to measure the appropriateness of a punitive-damages award against the defendant's financial condition until after the jury has rendered its verdict. It is at that juncture, upon appropriate motion by the defendant, that our jurisprudence calls on the trial court "to determine theproper *Page 1271 amount of recovery." Green Oil, 539 So.2d at 222
(emphasis added).[7]
Essential to the trial court's determination of the proper amount of the punitive-damages award is a determination that the presumption in favor of the award made by the jury has been rebutted. As the Green Oil Court explained, "the invocation of the trial court's authority under Ala. R. Civ. P. 59(f) to determine the proper amount of recovery and to deny a new trial, subject to filing of a remittitur of the amount in excess of the proper amount, is dependent upon the trial court's holding that the presumption of correctness of the jury verdict has been overcome by a clear showing that the amount of the verdict is excessive."539 So.2d at 222 (emphasis added).
If the presumption of correctness of the jury verdict is overcome, however, it then falls to the trial court to decide "the proper amount" of the award. The inquiry that must be made is "[w]hat amount is sufficient to punish [the defendant] and deter it, and others similarly situated, from committing similar acts in the future?" 539 So.2d at 222. As the Green Oil
Court further explained, the award "must not exceed an amount that will accomplish society's goals of punishment and deterrence," but at the same time "`the award . . . ought to be large enough to hurt. It ought to sting in order to deter; that is its purpose.'" 539 So.2d at 222 (quoting Ridout's-BrownServ., Inc. v. Holloway, 397 So.2d 125, 127 (Ala. 1981) (Jones, J., concurring specially)). It is for this reason that "[t]he defendant's financial condition is . . . a consideration essential to a post-judgment critique of a punitive damages award." 539 So.2d at 222.
I do not see how this Court can say that trial courts are to look to the so-called Green Oil factors to determine the appropriateness of punitive-damages awards, but, because of a self-serving stipulation by the defendant, not allow those same courts to consider the extent to which one or more of those factors support the award, or at least some award greater than that which the trial court otherwise would choose. Nor do I believe this Court has ever said this. I find no indication in our cases — before today's decision — that, where the task of the trial court is to decide what amount of punitive damages will be "proper," the financial condition of the defendant is not admissible both for the purpose of assessing what level of damages might be too much and for the purpose of assessing what reduced level of damages mightnot be enough.[8]
To lay the premise for its articulation of the seven factors, the Green Oil Court quoted at length from Justice Jones's special concurrence in Ridout's-Brown Service, Inc.v. Holloway: *Page 1272 
 "`That the law perforce furnishes not only a remedy but also allows substantial punitive damages for such a wrong goes without saying. I suppose what troubles me is the unguided discretion accorded in both the fact finding process and the judicial review that fixes the amount of punitive damages. The current system furnished virtually no yardstick for measuring the amount of the award over against the purpose of the award. We are all in agreement that the award in the instant case ought to be large enough to hurt. It ought to sting in order to deter; this is its purpose. But only in the rarest of cases should it be large enough to destroy;
this is not its purpose.
 "`Which of the two — merely to hurt or to destroy — does a $220,000 award accomplish here? I can readily agree that the gravity of the wrong, abundantly supported by the proof of record, justifies the full amount of this award; and, this being the sole cognizable standard, I am constrained to concur in the Per Curiam affirmance. But, still, in my opinion, something is missing; this standard is deficient. To the "gravity of the wrong" element should be added this inquiry: What (i.e., how much) will it take to punish this Defendant? The purpose of this two-fold test is to particularize both the wrongful act and the wrongdoer. Only when both elements — the gravity of the wrongful act and the amount of damages necessary to punish the particular defendant — are considered and weighed one against the other, can the award be rationally adjudged to accomplish the ultimate purpose of exemplary damages. [Emphasis [on "this"] in the original.]
 "`The problem, then, is how to infuse the second of these elements into the equation. The first — the extent and degree of the wrong — is supplied in the liability fixing stage of the proceedings. Because it impermissibly impugns the fact finding process regarding liability, however, evidence of the defendant's financial worth is inadmissible. Southern Life Health Ins. Co. v. Whitman, 358 So.2d 1025 (Ala. 1978). The reliability of the fact finding process cannot be sacrificed in an unbifurcated proceeding by allowing evidence on the issue of damages which may unfairly influence the fact finder in resolving the issue of liability.
 "`Thus, short of bifurcation with respect to the issues of liability and damages, the answer is to permit the injection of the second element — the adequacy vel non of the damages — in a post-judgment proceeding by way of judicial review. For example, if the Defendant in the instant case were the individual mortician earning $20,000 per year, this fact should be admissible in support of a post-judgment motion on the issue of the validity of the award. The gravity of the wrong may be the same, whether the defendant is a salaried employee or a multimillion dollar corporation, but, in the case of the former, the $220,000 verdict would be far out of proportion to its intended purpose. What it takes to punish the one bears no relationship to what it takes to punish the other.
 "`What I am saying is that, in the totality of the system, we must preserve the reliability of the fact finding process for adjudging liability and, at the same time, improve the reliability of the damages assessment process in order to fit the punishment (the amount of punitive damages) to the offensive conduct and the offender.' (Emphasis added.)"
539 So.2d at 222-23 (quoting Ridout's,397 So.2d at 127-28 (Jones, J., concurring specially)) (emphasis added, except for emphasis *Page 1273 
on "this" as indicated and in the last paragraph).
As the Green Oil Court and Justice Jones explained, "`[o]nly when both elements — the gravity of the wrongful act and the amount of damages necessary to punish theparticular defendant — are considered and weighed one against the other, can the award be rationally adjudged to accomplish the ultimate purpose of exemplary damages.'"539 So.2d at 223. Before Green Oil, the process of assessing the appropriate amount of punitive damages involved "unguided discretion." The system was missing an appropriate "`yardstick for measuring the amount of the award over against the purpose of the award.'" 539 So.2d at 222. That "purpose," as recognized by the Green Oil Court in the immediately following sentence, is an award that is "`large enough to hurt. It ought to sting in order to deter; this is its purpose.'"539 So.2d at 222. The problem, as the Court went on to explain, was how to "infuse" into "the equation" the evidence necessary to determine the amount of damages necessary to sufficiently punish the particular defendant in light of the fact that evidence of the defendant's financial condition was not admissible during the fact-finding process. The "answer," according to both Justice Jones and the Green Oil Court, was "`to permit the injection of the second element — the adequacy velnon of the damages — in a post-judgment proceeding by way of judicial review.'" 539 So.2d at 223.
Green Oil thus provided the "yardstick," the absence of which was lamented by Justice Jones. Obviously, a critical section of that "yardstick" is "the financial position of the defendant." Although this Court has held that the trial court may not add to the amount of a jury's award, that does not mean that the yardstick, within the parameters of $0 and the amount awarded by the jury, does not measure in both directions.
In other words, the submission of evidence in a GreenOil hearing is not a one-sided affair. The defendant never has had the right to introduce whatever evidence it could as to those particular Green Oil factors it believed would be favorable to it, while the plaintiff is unable to introduce "counter evidence" as to whichever of the Green Oil
factors augered in its favor. To say otherwise will now allow the defendant, by stipulating that it does not rely on otherGreen Oil factors, to limit the trial court to considering evidence of only those Green Oil factors that favor the defendant's position. Until today, it has always been my understanding of the law that the plaintiff, in an effort to persuade the trial court that the presumption in favor of the jury's verdict should not be deemed rebutted — or, if it is, that the verdict should not be reduced as much as the defendant urges — may introduce evidence of any of theGreen Oil factors, including any factors the defendant might have chosen to ignore because they hurt its cause.
It is my concern that the "something" provided by GreenOil will once again go missing from "the equation" as a result of today's decision. In its place, whenever a defendant unilaterally elects to exclude evidence of its financial condition from a Green Oil hearing, we will now have a "one size fits all" weight against remittitur. It would appear that such an approach is contrary to and would largely defeat the purpose sought to be achieved by Justice Jones and theGreen Oil Court. Just how heavy is this weight against remittitur? How is it to be assessed in relation to such other factors as might be presented by the plaintiff against
remittitur? Does it outweigh any other factor, or set of factors, that might be presented by the defendant in favorof remittitur? How does it *Page 1274 
"measure up" against such other factors? We will no longer be able to know these things because a critical section of the "yardstick" will be missing.
Nor do I find satisfactory the answer suggested by Chief Justice Cobb to these queries. If her reading of the main opinion is correct, a trial court must now assign "the most extreme weight to the disclaimed factor." 992 So.2d at 1275
(Cobb, C.J., concurring in the result). But again, how heavy is that? How heavy is the heaviest? If this factor is to be given "the most extreme," or the heaviest, weight possible, does it not necessarily outweigh any other factor that might be presented, either for or against remittitur? Alternatively, if it would be possible for some other factor also to be entitled to "the most extreme" weight in the same case, how would the trial court compare these two factors? If, for example, the nature of the civil sanctions already levied against the defendant was deemed to weigh as heavily as that factor possibly could in favor of remittitur, what should the trial court do? I suggest that the trial court logically would not know what to do. "Something [would be] missing" from the equation it has been instructed to use.
Over the last 20 years, substantial questions have been raised regarding Alabama's system for determining punitive damages. The effort to answer these questions has well engaged both this Court and the United States Supreme Court in numerous cases.See, e.g., BMW of North America, Inc. v. Gore,517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); Shiv-Ram, Inc.v. McCaleb, 892 So.2d 299 (Ala. 2003); Employees'Benefit Ass'n v. Grissett, 732 So.2d 968 (Ala. 1998);Life Ins. Co. of Georgia v. Johnson, 725 So.2d 934
(Ala. 1998); Bozeman v. Busby, 639 So.2d 501 (Ala. 1994);Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989);Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986). The place at which we have arrived after much time and effort encompasses the procedures and factors prescribed by this Court in Green Oil. I believe the Court today unwittingly makes a fundamental alteration to our law in this area. Given the arduousness of the path we have traveled to get to where we are, or at least where we were before today's decision, I believe any significant change to our law in this area should be made expressly and with a full exposition of what is being accomplished and why. I therefore respectfully decline to join in that portion of the main opinion holding in essence that evidence of a defendant's financial condition is neither discoverable by the plaintiff nor admissible for the purpose of supporting the plaintiff's position whenever thedefendant unilaterally decides that it will not rely on such evidence to support its position in a GreenOil hearing.
[5] Hammond v. City of Gadsden, 493 So.2d 1374
(Ala. 1986), and Green Oil Co. v. Hornsby, 539 So.2d 218
(Ala. 1989).
[6] The Restatement provision cited by the Supreme Court in City of Newport states that "the character of the defendant's act, the nature and extent of the harm to the plaintiff . . . and the wealth of the defendant" may properly be considered "[i]n assessing punitive damages." Restatement(Second) Torts § 908(2) (1979). The treatise relied upon by the Court states that "since the purpose of punitive damages is punishment and deterrence, the sum assessed, if it is to be effective at all, must be a sufficiently large one to have effect. . . . For these reasons, courts permit the . . . introduction of] evidence showing something of the defendant's financial resources." Dan B. Dobbs, Handbook on the Law ofRemedies § 3.9 pp. 218-19 (West 1973).
[7] Cf. Ridout's-Brown Serv., Inc. v. Holloway,397 So.2d 125, 126 (Ala. 1981) ("recogniz[ing] that, pursuant to [Ala.] Code 1975, § 12-22-71, where the only ground of reversal is the excessiveness of damages, the appellate court has the power to determine the proper amount ofrecovery. . . .").
[8] Green Oil itself referenced the factors of "criminal sanctions" and "other civil actions" as factors that should be taken into account "in mitigation of the punitive damages award." 539 So.2d at 224. None of the other five factors are so limited. The factor in question is stated merely as follows: "The financial position of the defendant would be relevant." 539 So.2d at 223.
In Bozeman v. Busby, 639 So.2d 501, 502 (Ala. 1994), this Court held that a trial court may not order anadditur of punitive damages. The reference in the text to a "reduced level of damages that might not be enough" is to one that would reflect too large a remittitur, i.e., a remittitur that results in a punitive-damages award that might not be large enough to accomplish the purpose of punitive damages.