On Return to Remand
On June 27, 2008, we remanded this case with directions for the trial court to conduct a hearing on the motion for a remittitur filed by Southeast Environmental Infrastructure, *Page 2 
L.L.C. ("SEI").[1] Specifically, we directed the trial court to hold a hearing to consider SEI's motion for a remittitur of the $1.1 million compensatory-damages award and the $400,000 punitive-damages award in Larry Rivers's action against SEI. We also directed the trial court to make a return to this Court following that hearing. In response, the trial court conducted a hearing on August 12, 2008, and entered an order on August 22, 2008, that, among other things, denied SEI's motion for a remittitur of the compensatory-and punitive-damages awards. A copy of that order was filed with this Court on September 26, 2008.
As to the compensatory-damages award, the trial court's order states:
 "The compensatory award of $1,100,000.00 is supported by the evidence in this case. The areas of damage to Rivers in addition to the proven medical bills of $207,000.00, include, but are not limited to, loss of hearing, facial palsy, lost time and inability to work, problems with family and interpersonal interaction in social situations, difficulty in understanding and remembering *Page 3 
instructions, the potential need for vocational re-training, depression, neurological treatment, impulsivity, disinhibition, lability, and other permanent effects of a traumatic brain injury. Dr. James Banos, neuropsychologist, was called to testify by SEI. Dr. Banos testified that Mr. Rivers sustained impact to his head on the right side of the head in the region of the temporal and parietal bones. Dr. Banos testified that the right side of the brain can be involved in non-verbal aspects of communication, social interaction, memory for non-verbal things, images, songs and aspects of interpersonal behavior. Dr. Banos also testified that an injury to the right side of the brain will affect the left side of the body. Dr. Banos characterized Mr. Rivers' injury as a traumatic brain injury and that the long-term consequences can include cognitive problems, memory problems, and executive functioning problems in addition to the medical problems mentioned above. Finally, Dr. Banos testified that some of the problems associated with traumatic brain injury can be lifelong with difficulties finding employment, maintaining employment, and family and interpersonal interaction issues. With regard to future treatment, Dr. Banos testified that there may [be] a future need for psychiatric treatment, treatment for depression, counseling and neurological issues.
 "The Court has given significant consideration to [the] lasting impact on the mind and body of Mr. Rivers and the debilitating injury that he suffered. Accordingly, the Court concludes that the compensatory award of $1,100,000 was justified based upon the evidence and is not due to be remitted."
The trial court's order states that, in reviewing the punitive-damages award, the trial court considered the award in light of the decisions of this Court in Hammond v. City of *Page 4 Gadsden, 493 So. 2d 1374 (Ala. 1986), and Green Oil Co. v. Hornsby,539 So. 2d 218 (Ala. 1989). The trial court, in upholding the $400,000 punitive-damages award, emphasized in particular the reprehensibility of SEI's conduct[2] and noted that the ratio of the punitive-damages award to the compensatory-damages award was .36 to 1.
After reviewing the trial court's order, we agree with the trial court that SEI was not entitled to a remittitur of the compensatory-and punitive-damages awards. Those awards are hereby affirmed.
AFFIRMED.
Cobb, C.J., and See, Woodall, and Parker, JJ., concur.
[1] This case was consolidated with two other appeals (1060643 and 1060876) also arising out of an action Larry Rivers filed against SEI and others. On June 27, 2008, we affirmed the judgment in case no. 1060643 and affirmed in part, reversed in part, and remanded in case no. 1060876. Neither of those cases is before us in this return to remand.
[2] In its order, the trial court cites evidence indicating that despite SEI's notice of and knowledge about proper safety procedures for rigging and excavation, SEI exhibited a "continuous disregard for such safety rules and regulations." For example, the trial court's order notes that a dangerous and unsafe strap had been confiscated from SEI before Rivers's injury and that, even though SEI had been informed not to use an unsafe strap, "the evidence was overwhelming and clear and convincing that . . . the rigging equipment being used [when Rivers was injured] was so deteriorated and in such a dangerous condition that a strap which should have been able to hold at least 12,000 pounds broke under a 400-600 pound load." Additionally, the trial court's order cites evidence of spoliation by SEI with regard to the strap involved in Rivers's injury. *Page 1