Rel: 08/29/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

_____

## 1091758

_____

**Target Media Partners Operating Company, LLC,
and Ed Leader**

**v.**

**Specialty Marketing Corporation d/b/a Truck Market News**

**Appeal from Calhoun Circuit Court
(CV-07-900201)**

On Return to Remand

PER CURIAM.

The defendants, Target Media Partners Operating Company, LLC ("Target Media"), and Ed Leader, appealed from a judgment entered in favor of the plaintiff, Specialty Marketing

1091758

Corporation d/b/a Truck Market News ("Specialty Marketing"). Specialty Marketing had sued Target Media and Leader, alleging breach-of-contract claims against Target Media and fraudulent-misrepresentation and promissory-fraud claims against Target Media and Leader. Target Media had filed a counterclaim alleging breach-of-contract claims against Specialty Marketing. A jury returned verdicts in favor of Specialty Marketing on its breach-of-contract claim, awarding compensatory damages of $851,552; in favor of Target Media on its breach-of-contract counterclaim, awarding compensatory damages of $48,800; in favor of Specialty Marketing and against Target Media on Specialty Marketing's promissory-fraud claim, awarding compensatory damages of $210,000 and punitive damages of $630,000; in favor of Leader on Specialty Marketing's promissory-fraud claim; and in favor of Specialty Marketing and against Target Media and Leader on Specialty Marketing's fraudulent-misrepresentation claim, awarding compensatory damages of $167,800 and punitive damages of $503,400. The trial court entered a judgment on that verdict. This Court affirmed the judgment as to the compensatory-damages awards but remanded the cause with instructions for

2

1091758

the trial court to hold a hearing on the question whether the punitive-damages awards are excessive. See Target Media Partners Operating Co. v. Specialty Marketing Corp., [Ms. 1091758, September 6, 2013] ___ So. 3d ___ (Ala. 2013) (Parker and Wise, JJ., concurred; Moore, C.J., and Shaw and Bryan, JJ., concurred in the result; Murdock, J., concurred in the rationale in part and concurred in the result; and Stuart, Bolin, and Main, JJ., concurred in part and dissented in part). Pursuant to our instructions, the trial court, on January 17, 2014, held a hearing pursuant to Hammond v. City of Gadsden, 493 So. 2d 1374 (Ala. 1986), and Green Oil Co. v. Hornsby, 539 So. 2d 218 (Ala. 1989), at the conclusion of which the trial court reaffirmed the punitive-damages awards. The trial court made its return to this Court on March 24, 2014. The only issue now before this Court is whether the punitive-damages awards are, as Target Media and Leader contend, excessive.

The trial court entered the following thorough and well reasoned order on remand:

"This matter comes before the court on remand from the Supreme Court of Alabama. Pursuant to the Court's opinion of September 6, 2013, a Hammond/Green Oil hearing was held on January 17,

3

2014, to review the punitive damages awarded by the jury in this cause and to consider the arguments made by defendant Target Media Partners Operating Company, LLC (hereinafter 'Target [Media]'), and defendant Ed Leader in their motions for remittitur. The punitive damages were returned by the jury on [Specialty Marketing]'s claims of fraudulent misrepresentation as to Target [Media] and Leader and on [Specialty Marketing]'s promissory-fraud claim as to defendant Target [Media]. Specifically, the jury returned a verdict against defendant Target [Media] on the claim for promissory fraud in the amount of $210,000 in compensatory damages and $630,000 in punitive damages. The jury returned a verdict against defendant Target [Media] and defendant Leader on the claim for fraud[ulent] misrepresentation in the amount of $167,800 in compensatory damages and $503,400 in punitive damages.

"This was a well-tried case on behalf of all parties. The court has carefully considered the briefs and arguments submitted by the parties as well as the evidence presented at the Hammond/Green Oil hearing held on January 17, 2014. This court has thoughtfully considered the testimony of each and every witness who testified during this almost two-week trial as well as the attentive jury who decided the case. With regard to [Target Media's and Leader's] motions for remittitur, the court has analyzed the Hammond/Green Oil factors, which the court is duty-bound to consider. The court, after careful consideration of all the Hammond/Green Oil factors, finds that there is no legal basis justifying remittitur of the punitive damages verdict returned by the jury in this case. The court finds that there was substantial evidence justifying and supporting the verdict as to all of the named defendants. There is no compelling justification for this court to remit the award in this case. The jury's award in this case is consistent with, and in line with, judgments that

4

have been affirmed by the Alabama Supreme Court in recent years.

"In assessing the appropriateness of the amount of a punitive damages verdict and judgment, the Alabama Supreme Court and the United States Supreme Court have provided certain guidelines or factors for a trial court to consider. In BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), and Green Oil Co. v. Hornsby, 539 So. 2d 218 (Ala. 1989), most of these guidelines are set forth. The factors to be considered under Green Oil and the associated case of Hammond v. City of Gadsden, 493 So. 2d 1374 (Ala. 1986), as stated in Green Oil, are as follows:

"'(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the actual or likely harm is slight, the damages should be relatively small; if grievous, the damages should be much greater.

"'(2) The degree of reprehensibility of the defendant's conduct should be considered. The duration of this conduct, the degree of the defendant's awareness of any hazard which his conduct has caused or is likely to cause, and any concealment or "cover-up" of that hazard, and the existence and frequency of similar past conduct should all be relevant in determining this degree of reprehensibility.

"'(3) If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, so that the defendant recognizes a loss.

"'(4) The financial position of the defendant would be relevant.

"'(5) All the costs of litigation should be included, so as to encourage plaintiffs to bring wrongdoers to trial.

"'(6) If criminal sanctions have been imposed on the defendant for his conduct, this should be taken into account in mitigation of the punitive damages award.

"'(7) If there have been other civil actions against the same defendant, based on the same conduct, this should be taken into account in mitigation of the punitive damages award.'

"Green Oil, 539 So. 2d at 223-24.

"The three BMW 'guideposts' are here numbered as factors (8), (9), and (10):

"(8) Reprehensibility. The U.S. Supreme Court majority stated that the most important factor in the analysis is 'the degree of reprehensibility of the defendant's conduct.' BMW, [517 U.S. at 575].

"(9) Ratio. The second 'guidepost' is the relationship between compensatory and punitive damages. Id. at [580].

"(10) Legislative Penalties. The third 'guidepost' is a comparison to comparable legislative fines and penalties for comparable misconduct. Id. at [583-84].

"At the hearing on January 17, 2014, [Target Media and Leader] presented evidence almost exclusively in regard to their respective financial positions. However, in their brief, [Target Media and Leader] argued other factors which they felt

6

were relevant. The court has given de novo review to each of the factors, and herein states the court's conclusions:

"1. Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendants' conduct as well as to the harm that actually has occurred. The evidence presented at trial made clear that [Specialty Marketing] was significantly injured as a result of [Target Media and Leader's] conduct. As stated by the Supreme Court in its opinion, 'the jury heard ample evidence from which it could have found harm' to [Specialty Marketing] as a result of [Target Media and Leader's] conduct. Target Media Partners Operating Co. v. Specialty Marketing Corp., [Ms. 1091758, September 6, 2013] ___ So. 3d ___, ___ (Ala. 2013). The Court went on to say that the evidence before the jurors in this case was sufficient to find that [Specialty Marketing] 'lost business and profits.' Id. [at ___]. In addition to the $400,000 paid to Target [Media], the evidence indicated that [Specialty Marketing]'s expenses were in excess of $1,500,000 in printing and shipping costs, much of which was lost due to [Target Media and Leader's] fraudulent conduct. This factor weighs in favor of [Specialty Marketing].

"2. The degree of reprehensibility of the defendants' conduct should be considered. The relation of this conduct, the degree of the defendants' awareness of any such conduct and any concealment or cover-up, and the existence and frequency of similar past conduct should all be relevant in determining this degree of reprehensibility. The degree of reprehensibility here is extremely high in that the evidence established that [Target Media and Leader] entered into their relationship with [Specialty Marketing] and continued that relationship for over four (4) years--all the while knowing they never intended to perform the services which had been promised.

7

"The most important factor the Court should consider in determining whether a remittitur is warranted is the relative degree of the defendants' culpability. 'Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendants' conduct.' BMW v. Gore, 517 U.S. at 575. Given the facts presented in this case, it is clear that the evidence supported a finding by the jury that [Target Media and Leader's] conduct was highly reprehensible.

"In its opinion, the Supreme Court found:

"'It cannot be disputed in this case that the jurors reasonably could have found that Target Media and its principals made fraudulent misrepresentations, that those misrepresentations involved material facts, and that those misrepresentations damaged Speciality Marketing.'

"Target Media, [___ So. 3d at ___].

"Mobile Infirmary Association v. Tyler, 981 So. 2d 1077 (Ala. 2007), makes it clear that reprehensibility is not a mathematical formula based on a number of wrongful acts. However, the number of wrongful acts can aggravate the reprehensibility factor. The evidence here is that [Target Media] engaged in this same conduct prior to entering into the relationship with [Specialty Marketing] as well as at the time it was negotiating to distribute [Specialty Marketing]'s magazines.

"The evidence shows that [Target Media] never intended to fulfill the promises that it made to [Specialty Marketing]. The evidence here established that in addition to the $400,000 paid directly to [Target Media], [Specialty Marketing] paid approximately $900,000 in printing costs, approximately $200,000 of which the jury could have

8

found was attributed solely to magazines that were thrown away in Oxford, Alabama, and that [Specialty Marketing] lost business and profits as a result of [Target Media and Leader's] conduct. This court agrees with the statement made by [Specialty Marketing] in its brief that 'in the context of the relationship between [Specialty Marketing] and [Target Media] in this case, there can be no more reprehensible conduct than to lie and defraud the other party and to utterly fail--intentionally--to perform the duties promised.' The evidence here was clear and convincing that [Target Media and Leader's] conduct was consistent and continuous throughout the relationship between the parties. This factor weighs heavily in favor of [Specialty Marketing].

"3. If the wrongful conduct is profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit so that the defendant recognizes a loss. Ex parte Vulcan Materials Co., 992 So. 2d 1252 (Ala. 2008). In this case, the total amount of punitive damages given by the jury was $1,133,400. The evidence was that [Specialty Marketing] paid [Target Media] $400,000 for services that were not performed. [Target Media and Leader] committed themselves to defrauding [Specialty Marketing] and coerced employees to ensure that the fraud was accomplished. The evidence clearly established that [Target Media and Leader] did so to create a profit by placing Target [Media]'s own books ahead of [Specialty Marketing]'s, by destroying [Specialty Marketing]'s books, and by pocketing $400,000 in contract proceeds without working for that money. Moreover, as noted by the Supreme Court, [Target Media and Leader] did this never intending to fulfill the promises made to [Specialty Marketing].

"This Court believes that the jury provided punitive damages in excess of the profits gained by [Target Media and Leader] so that [Target Media and

9

Leader have] recognized a loss which is reasonable in the context of [their] conduct.

"[Target Media and Leader argue] that there is no evidence that defendant Leader profited from the conduct underlying the punitive damages in this case. Evidence at the hearing established that Leader earned between $100,000 and $150,000 each of the years of the contractual relationship between Target [Media] and [Specialty Marketing]. This would total between $400,000 and $600,000 during the time frame that [Specialty Marketing] was actively being defrauded. The Court finds that profit gained by Target [Media] should be imputed, at least in part, to defendant Leader, an officer of the company. This is true not only with regard to moneys paid by [Specialty Marketing] directly to [Target Media], but also by distributing and displaying [Target Media]'s books in place of [Specialty Marketing]'s books. This is especially true since Leader was established to be one of the point men in accomplishing the fraud. This factor weighs against remittitur.

"4. The financial position of the defendant would be relevant. This is the factor argued most vehemently by [Target Media and Leader]. The evidence presented at the Hammond/Green Oil hearing was almost exclusively with regard to this factor. [Target Media] presented financial statements/audits showing that Target Media lost tens of millions of dollars between the years 2008 and 2012, and that Target Media currently has a negative net worth of millions of dollars. Similarly, [Target Media and Leader] offered evidence at the hearing that Ed Leader has made between $100,000 and $150,000 per year in his employment with Target [Media] since 2001; that Leader is 'underwater' in his home and has a 'modest retirement plan.' The evidence at the hearing was that his retirement plan has a few hundred thousand dollars in it.

"[Target Media and Leader] argued that the imposition of $1,133,400 against Target [Media] 'may very well destroy it.' [Target Media and Leader] further argued that the imposition of <u>any</u> punitive damages against Leader will have the effect of destroying him.

"The Alabama Supreme Court has stated that 'punitive damages should sting, but should not destroy a defendant.' <u>Green Oil</u> [539 So. 2d] at 222. The court has performed its own de novo examination of the amount of the verdict, and the court can find no valid basis for any remittitur. A review of [Target Media's] financial statements reveals that the financial health of Target Media is not likely to depend or be largely affected by the relatively small punitive damages award from this case. The company continues to generate several million dollars in revenue each year. In fact, the only witness who testified on behalf of Target Media at the <u>Hammond/Green Oil</u> hearing was the individual defendant and officer of the corporation, Ed Leader. When asked directly whether this punitive damages award would cripple or destroy Target Media, Leader testified that he had no information that that would be true, and further testified that he doubted the size of this verdict would have much of an effect in the context of the company's current financial condition. From the evidence before this court, it is evident that the jury award, while inflicting a sting on Target Media, is not significant in terms of that company's size and operations.

"[Target Media and Leader's] argument with regard to Leader is effectively that the punitive damages award against him should be reduced to 'zero.' This position shocks the conscience of the court. All of the evidence regarding the deceptive and fraudulent conduct of [Target Media] as it relates to the fraud/misrepresentation claim is also applicable to Ed Leader. While the evidence showed that the conduct was carried out by many of [Target

11

Media's] employees, that conduct was ordered and overseen by Ed Leader. The court finds that a remittitur (especially to zero) would fail to do justice and would fail to serve the law's twin aims of specific and general deterrence. Contrary to [Target Media and Leader's] argument, a judgment lien, no matter how large, is not a financial death penalty. Present Alabama law limits the percentage of wage garnishment and limits the effective range of a judgment to a maximum of 20 years.

"With regard to both Target Media and Leader, the court notes that collectibility of this judgment is not the sole issue in a punitive damages case. The fact that this judgment may be difficult to collect is not the sole interest or relevant factor. An equally central purpose of punitive damages is general deterrence--the amount of the verdict is intended as a warning to all potential corporate and individual defendants not to engage in intentional, fraudulent behavior. A remittitur in this case would mitigate the efficacy of this verdict's value to general deterrence. A remittitur would also disrespect this jury's work. This factor weighs against remittitur.

"5. All the costs of litigation should be included, so as to encourage plaintiffs to bring wrongdoers to trial. This factor has not been argued by the parties herein, so the court finds that this is a neutral factor in this case.

"6. If criminal sanctions had been imposed on [Target Media or Leader] for [their] conduct, this should be taken into account in litigation of the punitive damages award. This factor is not applicable.

"7. If there had been other civil actions against the same defendants, based on the same conduct, this should be taken into account in litigation of the punitive damages award. There is

no evidence before this court of any actions based on the same conduct. ... This factor weighs in favor of [Specialty Marketing].

"8. Reprehensibility. This United States Supreme Court BMW 'guidepost' is already discussed in No. 2 above.

"9. Ratio. The second BMW 'guidepost' is the relationship between compensatory and punitive damages. In this case, the jury returned a verdict for compensatory damages in the amount of $377,800 in the fraud and promissory-fraud claims. The punitive damages given were in the amount of $1,133,400. The ratio of punitive to compensatory damages here is 3:1.

"The Alabama Supreme Court has approved a 3:1 ratio 'benchmark.' The 3:1 'benchmark' approved by the Alabama Supreme Court has been held to be 'presumptively reasonable.' Prudential Ballard Realty Co. v. Weatherly, 792 So. 2d 1045 (Ala. 2000). The Supreme Court has further held that a ratio of 3:1 weighs against a remittitur, without some special justification. 'Only in the most extraordinary situations would the award be deemed excessive when the [punitive damages award] is at or below the benchmark.' Weatherly [792 So. 2d] at 1053; see also Southern Pine Electric Cooperative v. Burch, 878 So. 2d 1120 (Ala. 2003). The Court finds that this case does not present a 'most extraordinary' situation that would dictate reducing the punitive damages in this case. This factor weighs heavily in favor of [Specialty Marketing].

"10. Legislative penalties. The third BMW 'guidepost' is a comparison to comparable legislative fines and penalties for comparable misconduct. Here, the jurors awarded punitive damages that do not exceed three times the amount of the compensatory damages awarded. These punitive damages are no more than the monetary penalties

[Target Media and Leader] could suffer under the Alabama Deceptive Trade Practices Act, Ala. Code 1975 § 8-19-1 et seq. That act prescribes (1) fines, (2) treble compensatory damages, and (3) an award of costs and attorney fees. The comparable legislative penalty is virtually equivalent to the jury's verdict in this case. This factor weighs in [Specialty Marketing]'s favor and against remittitur.

"Therefore, for all these reasons, the request for remittitur by defendant Target Media Partners Operating Company, LLC, and defendant Ed Leader is denied. The court finds that the jury's punitive damages verdict against Target Media Partners Operating Company, LLC, in the amount of $630,000 on [Specialty Marketing]'s claim of promissory fraud and the jury's verdict for punitive damages against defendant Target Media Partners Operating Company, LLC, and defendant Ed Leader on [Specialty Marketing]'s claim of fraud[ulent misrepresentation] in the amount of $503,400 [were] fair, reasonable and justified."

We need add nothing to the trial court's detailed analysis of the BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), and Hammond/Green Oil factors in this case. After reviewing that analysis, we agree that, based on the level of reprehensibility of the misconduct evidenced in this case, a $630,000 punitive-damages award against Target Media on the promissory-fraud claim and a $503,400 punitive-damages award against Target Media and Leader on the fraudulent-misrepresentation claim are sufficient to punish Target Media

14

1091758

and Leader and to deter them from further misconduct, without compromising their due-process rights.  The judgment entered on the punitive-damages awards of $630,000 and $503,400 is hereby affirmed.

AFFIRMED.

Moore, C.J., and Parker, Murdock, Shaw, Wise, and Bryan, JJ., concur.

Stuart, Bolin, and Main, JJ., dissent.